## State of Connecticut *v.* Roy A. Magoon

King, C. J., Alcorn, Cotter, Thim and Ryan, Js.

Argued March 7—decided April 2, 1968

*Irving H. Perlmutter,* with whom was *William A. Jacobs,* special public defender, for the appellant (defendant).

*Peter W. Gillies,* special assistant state's attorney, for the appellee (state).

ALCORN, J.  The defendant was presented in the Superior Court on an information charging him with thirteen counts of arson in violation of § 53-83 of the General Statutes.  Following a jury trial, separate verdicts of guilty were returned on ten counts and verdicts of not guilty were returned on three counts.  The court accepted the verdicts. Thereafter, the defendant filed a motion to set aside "the verdict" which the court and counsel treated as a motion to set aside each guilty verdict. Following a hearing on the motion, the court set aside the verdicts on four counts but refused to set aside the verdicts on the remaining six counts. Judgment was rendered on the verdicts on six counts, and an identical sentence to the state prison was imposed on each count, the sentences to run concurrently.

The defendant has appealed from the judgment, assigning error in the finding; in the denial of a motion to suppress the testimony of certain police officers; in the refusal to charge the jury as requested; in the charge as given; and in the denial of the motion to set aside the verdicts on the six counts on which judgment was rendered, the claim being that those verdicts were not supported by the evidence.

During the trial, when the defendant made the motion to suppress, the court heard evidence in the absence of the jury and, consequently, has made a

finding of facts on that motion distinct from the finding of the facts claimed to have been proved by the parties before the jury. The assignments of error attack both findings indiscriminately. The defendant is entitled to no correction of any material import in either finding.

We consider first the defendant's claims relating to the motion to suppress. The motion complains, in substance, that the defendant was taken into custody on Friday, January 24, 1964, and was held in custody at state police headquarters in Hartford until about 3:30 p.m. on Saturday, January 25, 1964, that, during that period, he was interrogated, was denied his request for an opportunity to consult counsel and was not warned of his right to remain silent, and that, when his counsel appeared at state police headquarters, he was kept waiting for about two hours before being permitted to consult the defendant.

Because the trial was held subsequent to the decision in *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, the rule in that case furnishes the guide for our decision concerning the issues raised by the motion. *Johnson* v. *New Jersey,* 384 U.S. 719, 721, 86 S. Ct. 1772, 16 L. Ed. 2d 882. The rule announced in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, is not applicable inasmuch as that case was decided subsequent to the trial of the present case. *Johnson* v. *New Jersey,* supra.

At the hearing on the motion the court found the following facts: Between May 23, 1963, and January 5, 1964, there were twelve fires in buildings in the Lake Beseck area in the town of Middlefield. There were many cottages in the area which were occupied only during the summer season, but the

defendant and his family were year-round residents of the area. Because of the suspicious circumstances surrounding the fires, they were investigated by the police, who questioned the defendant about eight times either at his home or elsewhere. In the course of the investigation, the defendant complained of the conduct of some police officers. As a result, a hearing was held on his complaint early in January, 1964. The defendant was not questioned concerning the fires at that hearing, but, at its conclusion, he approached Major Samuel S. Rome of the state police and said: "Any time you wish to talk to me, I will give you my address or telephone number. I will gladly talk with you." About two weeks later, on Friday, January 24, Major Rome and another officer went to the defendant's place of employment and talked with him, and the defendant agreed to go to Hartford with them. During the ride to Hartford the fires were discussed, and, on arriving at the state police barracks in Hartford about noon, the defendant and the officers lunched in the officers' cafeteria, and, thereafter, during the afternoon and evening, Major Rome and other police officers questioned the defendant about the fires. The defendant seemed to enjoy the conversation, asked questions of his own and expressed his own views. At about 9 o'clock that evening he was placed under arrest and was then informed that he had the right to consult an attorney and to remain silent. At no time on Friday did he ask to consult an attorney. At about 9:15 p.m., the defendant's wife was brought to police headquarters, and the defendant, his wife and Major Rome discussed the defendant's right to refrain from making any statement and his right to have an attorney. Both the defendant and his wife felt that an attorney was not necessary at that

time. The defendant, however, asked his wife to call Attorney William A. Jacobs if she arrived home before midnight, but she returned home later than that and, in the morning, forgot to call the attorney. On Saturday morning, January 25, the defendant for the first time asked that an attorney be called, whereupon Major Rome telephoned to Attorney Jacobs, the attorney selected by the defendant, and the defendant talked with Jacobs on the telephone. He told Jacobs that he was under arrest and stated the nature of the charges and the amount of his bond. Jacobs then told Major Rome, over the telephone, that he represented the defendant and that he objected to the officer having any further discussion of the case with the defendant. The questioning continued, however, in Rome's office in the presence of the defendant's wife and another officer in a relaxed atmosphere until a little past lunchtime. At about 2:30 in the afternoon Jacobs arrived and, after about fifteen minutes, was allowed to confer with the defendant. At no time either on January 24 or on January 25 was there any reluctance on the defendant's part to discuss the fires. On both days Major Rome asked the defendant to make a written statement, but the defendant refused to do so.

The court concluded that no constitutional rights of the defendant were violated during his interrogation, that at the time of his arrest he was informed of his right to consult counsel and of his right to remain silent, that he arranged to have his wife notify his attorney but she neglected to do so, that subsequently, when he requested the police to call his attorney, they promptly did so and permitted him to confer with his attorney and, finally, that any statements he had made during his interroga-

tion were voluntary. The court denied the motion to suppress and, when the jury were recalled, admitted in evidence such testimony as was not validly objected to concerning the substance of the questioning on January 24 and 25.

The defendant would have us revise the facts found and the conclusions reached by the court, but an examination of the extensive evidence printed in the appendix to the defendant's brief furnishes full support for the court's finding. Conflicting evidence was offered, and it was the province of the trial court to resolve that conflict and determine the facts. *State* v. *Darwin,* 155 Conn. 124, 149, 230 A.2d 573; *State* v. *Coulombe,* 143 Conn. 604, 608, 124 A.2d 518. It is not the function of this court to decide the facts. *Bent* v. *Torell,* 139 Conn. 744, 748, 97 A.2d 270; *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 538, 129 A. 527.

Even if we were to assume that the police investigation had begun to focus on the defendant, a fact not expressly found by the trial court, nevertheless the circumstances disclose no harmful results of the interrogation. Although the police carried out a process of questioning which, under the rule of the *Escobedo* case, would "lend itself" to eliciting incriminating statements, 'there is no finding that any incriminating statement was made. The defendant's effort is only to demonstrate that what was said was, in some way, harmful. It is conceded that the defendant gave no statement and that he did not admit any implication in the fires. His statements to the police are described in his brief as "fragments of conversations" about the motives for the fires. The court did not err in denying the motion to suppress.

No error is assigned in the admission into evi-

dence, before the jury, of testimony by any of the police officers concerning the questioning of the defendant. Exceptions were taken only to rulings on such testimony at the hearing on the motion to suppress. Only one of these is assigned as error on this appeal. As to that it appears that, during the cross-examination of Major Rome, defense counsel sought to elicit whether the witness would have permitted the defendant to leave police headquarters during his interrogation if he had wished to leave. The implication in the stated purpose was to show that the defendant was in custody during all of the period of questioning. The court excluded the question. We need not consider the ruling because, even if the defendant was under restraint at the time of his questioning, the exclusion of the question, even if erroneous, could not be harmful since no incriminating statement affecting the result is shown to have been elicited. *Delano* v. *Armstrong Rubber Co.,* 136 Conn. 663, 670, 73 A.2d 828; *Carroll* v. *Arnold,* 107 Conn. 535, 544, 141 A. 657.

We turn now to the errors assigned in the charge. The defendant complains of the court's refusal to charge the jury, in substance, that in addition to proof of the corpus delicti the state was required to prove the criminal connection of the defendant with the burning and that proof of the burning alone was not sufficient because, in the absence of anything further, the law would presume an accidental or other "providential" cause. Our examination of the charge discloses that the court adequately and properly described the crime of arson to the jury and then told the jury that "one of the necessary elements to constitute the crimes with which the accused is charged is that, as to each count, he set the fire or burned the building wilfully and mali-

ciously." The charge adequately covered the subject matters of the requests. Error is assigned in one other paragraph of the charge. There was no request to charge on the subject matter involved, and no exception was taken following the charge. Consequently, we do not consider the assignment. Practice Book § 249.

There remains for consideration the claim that the evidence was not sufficient to support the verdicts upon which judgment was rendered. Such a claim is normally reviewed on the evidence printed in the appendices to the briefs and such exhibits as are made a part of the record. *State* v. *Hassett,* 155 Conn. 225, 232, 230 A.2d 553; *State* v. *Stallings,* 154 Conn. 272, 283, 224 A.2d 718; *State* v. *Mallette,* 153 Conn. 584, 585, 219 A.2d 447. The appendices to the briefs which the parties have filed, however, have cast a wholly unnecessary burden on this court. The appendix filed by the state is a sketchy narrative chiefly pertinent only to the attacks made on the finding. The appendix filed by the defendant consists of 274 pages of testimony and colloquy. Neither one complies with the rules. Practice Book §§ 720, 721; Maltbie, Conn. App. Proc. § 331. We have therefore found it necessary to review the typewritten transcript in order to determine whether the state sustained its burden of proving the defendant guilty beyond a reasonable doubt on the counts in issue. *State* v. *Bill,* 146 Conn. 693, 694, 155 A.2d 752. The action of the court, which saw and heard the witnesses, is entitled to weighty consideration on this phase of the case. *Sitnik* v. *National Propane Corporation,* 151 Conn. 62, 65, 193 A.2d 503. The counts on which the court sustained the verdict were counts one, two, four, six, eleven and twelve. In order to support the verdicts on these counts, the

evidence was required to be such that the jury could conclude beyond a reasonable doubt that each fire was incendiary in origin and that the defendant set it wilfully and maliciously. *State* v. *Guastamachio,* 137 Conn. 179, 181, 75 A.2d 429; *State* v. *Jordan,* 136 Conn. 201, 204, 69 A.2d 834; *State* v. *Frost,* 105 Conn. 326, 335, 135 A. 446; *State* v. *Pisano,* 107 Conn. 630, 632, 141 A. 660; *Commonwealth* v. *Nasuti,* 385 Pa. 436, 441, 444, 123 A.2d 435. There was evidence from which the jury could have found the following:

Counts one and two involved the burning, at about 9 p.m. on May 23, 1963, of two adjoining unoccupied cottages. Photographs taken of the burned properties graphically demonstrated that the fires started on the exterior of the buildings, and the testimony was that they were caused in each instance by igniting kerosene soaked automobile tires. The remains of burned tires were found at one cottage which was severely damaged. Tires which had been ignited but not consumed were removed from the other before the porch of the building had more than started to burn. The tires were wet with kerosene. The defendant was among the large number of persons who watched the fires burn. The tires which were found there were of a size used on two vehicles owned by the defendant.

The fourth count concerned the burning of an unoccupied cottage at about 7:15 p.m. on June 20, 1963. Two witnesses saw the defendant running from the building at the time the fire was discovered. He was then wearing dark trousers, a T-shirt and arctics. The defendant lived about one-quarter of a mile from the burned building, and, about twenty minutes after first being seen, he returned to the scene while the fire was being fought,

dressed in a reddish plaid coat with light colored pants. Witnesses described the start of the fire as "the skin" of the cottage which burned with "a lot of smoke at first" while the flames were "young."

Count six concerned the burning of an unoccupied cottage at about 9:06 p.m. on August 19, 1963. Photographs taken at the scene indicated that the fire had originated on the outside of the building. Kerosene was the origin of the fire. It had started on or under the porch. A Gulf oil can was found at the side of the building where the fire had started, there was a strong odor of kerosene, and the ground in the area was soaked with kerosene. At about 4:45 o'clock that afternoon, the defendant was seen driving in the direction of the cottage, which is on a dead-end street, and was seen returning "a minute or two" later. Some two or three weeks before this fire, the defendant asked a fellow employee to investigate a rumor that the police intended to arrest someone because a Gulf oil can had been found at one of the fires.

Count eleven concerned the burning of a cottage on November 27, 1963. The photographs in evidence again indicated that the fire had started at the exterior of one corner of the building. The lid of a trash can was found near this corner which bore a strong odor of kerosene, and the ground around it was soaked with kerosene or gasoline. A footprint was found 100 feet from the cottage, and a cast of the print was made. A voluntary comparison was made with the defendant's shoes and revealed a perfect match. The defendant at first denied being in the area of the cottage but later admitted that he had been there at dusk on that day and that the footprint was his.

Count twelve concerned the burning of a cottage

at about 1 a.m. on January 5, 1964. The fire had started at the rear porch. There was a light snow on the ground. The defendant's automobile had been seen parked approximately 100 yards from the cottage at about 1 o'clock that morning, and an examination of the vehicle at the defendant's home while the fire was burning indicated that the car had recently been driven. The defendant admitted having been in the area where his car had been seen and gave varying explanations for his presence there. Footprints were discovered leading from where his car had stood to the road close to the cottage. The defendant had gone to bed at 9:30 that night, but, when his wife was awakened by the fire alarm, he was not in the house. He came in shortly thereafter.

The defendant and his family lived year-round in the neighborhood of all of the burned buildings. Late one night in December, 1963, the defendant took a tour of the area with a friend. On the way they passed a barn, and the defendant commented that if it were set on fire it would not hurt anything and that "two fellows riding alone here like us, one could act as a drop-off and the other as a pick-up." The defendant frequently talked about fires and during such conversations would become tense and excited, but when the subject was not discussed he appeared relaxed. The defendant also explained to this friend how some of the fires in the Middlefield area had been started and demonstrated how a delayed fire could be started with the use of a cigarette and a book of matches. In February, 1964, following his arrest, he told the same person that he would like to set fire to the state police office in Middlefield as a diversionary measure. It is unnecessary to chronicle other direct evidence which was before the jury or the reasonable infer-

ences which they could draw from the testimony and the exhibits which were before them.

The court did not err in refusing to set aside the verdicts on counts four, eleven and twelve. We conclude that the evidence on counts one, two and six was insufficient to permit the jury to conclude, beyond a reasonable doubt, that the defendant was the active agent responsible for starting the fires involved in those counts.

There is no error as to counts four, eleven and twelve; there is error as to counts one, two and six, the judgment is set aside and the case is remanded with direction to render judgment as on file on counts four, eleven and twelve and to grant the motion to set the verdicts aside as to counts one, two and six.

In this opinion the other judges concurred.