**UNITED STATES ex rel. Roy Alden MAGOON**

v.

**Frederick REINCKE, Warden, Connecticut State Prison.**

**Civ. No. 12566.**

United States District Court
D. Connecticut.

Sept. 19, 1968.

Irving H. Perlmutter, New Haven, Conn., for petitioner.

Vincent J. Scamporino, State's Atty., Middletown, Conn., for respondent.

## MEMORANDUM OF DECISION ON PETITION FOR A WRIT OF HABEAS CORPUS

BLUMENFELD, District Judge.

Roy Alden Magoon petitions for a writ of habeas corpus and for permission to proceed in forma pauperis. His basic allegation is that statements he had made while in police custody were admitted into evidence although when he made them he had not been adequately warned or permitted to consult with counsel under the rule enunciated in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Upon the verified petition and the affidavit of indigency, leave to proceed in forma pauperis was granted and this court ordered a writ of habeas corpus to issue directing the respondent to produce the petitioner for a hearing. At the hearing, the record of the state proceeding was admitted and Magoon was permitted to testify. The following facts are all from the record on appeal in State v. Magoon, 156 Conn. 328, 240 A.2d 853 (1968).

*Facts*

In the winter of 1963–64, several summer cottages in the Lake Beseck area of Middlefield were destroyed by fires apparently started by an arsonist. Magoon, who lived in that neighborhood, was questioned at least eight times by police with respect to those fires. He lodged a complaint with Major Samuel Rome concerning the conduct of certain police officers, and an inquiry was undertaken. Thereafter, the petitioner indicated to Major Rome that he would talk with him at any time.

A few weeks later, on Friday, January 24, 1964, Major Rome picked up Magoon at work at 11:00 a. m. and took him to the Hartford police barracks. He, William Hickey, and other police officers questioned the suspect about the Lake Beseck fires until 9:00 p. m., at which time they formally placed him under arrest as the arsonist. He was then informed of his right to consult with counsel and of his right to remain silent.[1]

Mrs. Magoon was brought to the police barracks and she and the petitioner discussed the need for a lawyer. They decided that one was not immediately necessary. Magoon requested his wife to contact Attorney Jacobs if she returned home before midnight, but she got home after that time and subsequently neglected to make the call. At no time on that Friday did Magoon ask to see an attorney.

On Saturday morning, the petitioner approached Major Rome in the officers' dining room, and, although there was no interrogation taking place at the time, Magoon volunteered information as to the possible motives for setting the fires. Major Rome then brought Magoon to his office in order to discuss this information further and to obtain a complete confession. Shortly thereafter, petitioner asked Major Rome to call Attorney Jacobs for him, which Rome

---

**1.** The petitioner has not shown that the police officers testified to any statement made by him on January 24, 1964, prior to 9:00 p.m., although they did state that

before that time Magoon freely discussed the fires and showed an interest in the cause of the fires.

promptly did. Jacobs talked to Magoon and to Rome, asking the latter to refrain from further interrogation of the suspect until he was present.

Rome disregarded this request and continued the interrogation. Rome testified at the hearing on the motion to suppress that he disregarded the request because "I don't take warnings from you, Mr. Jacobs." (Brief for Appellant, State v. Magoon, Appendix at 80a).

The interrogation continued through the morning and into the afternoon, with Magoon's wife present. Statements made by both Magoon and his wife at this time were later testified to at the trial. Around 2:30 p. m. Jacobs arrived and was permitted to talk with his client after a short delay.

### The Trial

Magoon was tried on 13 counts of arson in violation of Conn.Gen.Stats. § 53–83. The jury found him guilty on 10 counts; the trial court accepted the verdicts on 6 counts but set aside the verdicts on the other 4 for insufficient evidence. The Connecticut Supreme Court affirmed the judgment on 3 counts and set aside the verdicts on the remaining 3, also because of insufficient evidence. State v. Magoon, *supra*.

■ During the trial, the defense moved to suppress the testimony of Major Rome and Sergeant Hickey. Rome, Hickey, and Mrs. Magoon testified in the absence of the jury on the issues of whether, under *Escobedo*, Magoon was denied the assistance of counsel and given a warning against self-incrimination. The hearing on the motion to suppress was held on September 29, 1964, and special findings of fact with respect to the ruling were subsequently filed. The trial judge found the factual circumstances as stated earlier in this opinion and concluded that the con-

stitutional rights of the defendant were not violated in the police interrogation on January 24th and 25th, and that Magoon was informed of his right to counsel, his right against self-incrimination, and the availability of bail. He further found that the police promptly permitted Magoon to confer with his attorney when he so requested and that any statements made were given voluntarily.[2] The motion to suppress was denied, an exception was taken, and the trial continued.

Rome and Hickey thereafter testified that on Saturday, January 25, 1964, Magoon had stated the following: that the fires were not set by a pervert as Rome had surmised, but by someone with a profit motive; that he could not confess to all 13 fires but "more likely two"; that he had started two fires with cigarettes; and that he stated, "Keep quiet, you will send us both to jail" when his wife told the police that there was a change in Magoon's sexual activity at the time of the fires.

### The Applicability of Escobedo

Petitioner bases his claim of the inadmissibility of his statements on Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), rather than on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). His trial was held in September 1964, subsequent to the Supreme Court's rendering of the former decision but prior to the latter; *Miranda* is not retroactive. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

The holding of *Escobedo* is

"that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting

2. A claim of involuntariness need not be made under *Escobedo*. *Cf.* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). *Escobedo* is

based on the sixth amendment right to counsel, not on the fifth amendment right against compulsory self-incrimination.

incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342, [83 S.Ct. at 795, 9 L.Ed.2d 799,] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (378 U.S. at 490–491, 84 S.Ct. at 1765)

### The Warning to an Accused

Escobedo requires that the accused be "effectively warned" of his right to remain silent, but does not define "effective warning." Miranda holds that "[t]he warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court." 384 U.S. at 469, 86 S.Ct. at 1625. Miranda, of course, does not apply to the present case; and the fact that Miranda included the explanation of the consequences of the failure to remain silent as an element in the required four-part warning, see 384 U.S. at 479, 86 S.Ct. 1602, separate from the warning of the right to remain silent, indicates that the explanation of the consequences of the failure to remain silent is not simply a gloss on the warning of the right to remain silent required by Escobedo, but rather is a separate and distinct requirement.[3]

■ With this in mind, the warning given Magoon was "effective." The trial judge found that Major Rome informed Magoon that he "had a right not to make any further statements or give any further information or evidence against himself * * *." (Finding 139). This warning was sufficient,

under pre-Miranda standards, to make clear to Magoon that he had the absolute right to remain silent.

### The Right to Counsel

■ Irrespective of the warning issue, Escobedo, forbids the police from denying the suspect the opportunity to consult with his lawyer. The police cannot justify the denial of this opportunity by showing that they gave an effective warning of the right to remain silent. The right to silence is guaranteed by the fifth amendment, distinct from the sixth amendment right to counsel. Although there is a "need for counsel to protect the Fifth Amendment privilege," Miranda v. Arizona, 384 U.S. at 470, 86 S.Ct. at 1625, the Supreme Court stated in United States v. Wade, 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967), that "nothing decided or said in the opinions in the cited cases [including Escobedo] links the right to counsel only to protection of Fifth Amendment rights. Rather those decisions 'no more than reflect a constitutional principle established as long ago as Powell v. Alabama [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158] * * *.'" (Emphasis added). The crucial question is, then, whether the police denied Magoon his right to the assistance of counsel.

Both the trial judge, in his ruling on the motion to suppress, and the Connecticut Supreme Court chose to define Escobedo too narrowly. They held that Magoon was not denied his right to the assistance of his lawyer because Major Rome allowed Magoon to speak on the telephone with Attorney Jacobs as soon as Magoon requested to do so.

To the extent that this ruling was based on the recognition that Magoon had become the accused and that his arrest and detention marked a stage in the criminal process where the sixth amendment right "to have the Assistance of Counsel for his defence" attached, it

---

3. The third element is the right to the presence of an attorney, and the fourth is the right to an appointed attorney if the suspect cannot afford one.

conformed to the requirements laid down in *Escobedo,* particularly the part of that opinion at 485: "[T]he investigation had ceased to be a general investigation of 'an unsolved crime.' * * * Petitioner had become the accused, and the purpose of the interrogation was to 'get him' to confess his guilt despite his constitutional right not to do so." Still, those circumstances which determine the time when the right to counsel attaches are not irrelevant to the scope of that right. To grant the right to counsel in the abstract without regard to the values it is designed to safeguard ignores the essential point. Without any wish to repeat the thorough documentation of the reasons which the Supreme Court noted in support of its ruling in *Escobedo,* I will confine myself to those parts of that opinion which furnish an ample guide to an understanding of the need for the presence of counsel during jailhouse interrogation, 378 U.S. 486–488, 84 S.Ct. 1762, 1763:

> "The 'guiding hand of counsel' was essential to advise petitioner of his rights in this delicate situation. Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158. This was the 'stage when legal aid and advice' were most critical to petitioner. Massiah v. United States *supra* [377 U.S.] at 204 [84 S.Ct. at 1202, 12 L.Ed. 2d 246] * * *. What happened at this interrogation could certainly 'affect the whole trial,' Hamilton v. Alabama, *supra,* [368 U.S.] at 54, [82 S. Ct. at 159, 7 L.Ed.2d 114] since rights 'may be as irretrievably lost, if not then and there asserted, as they are when an accused represented by counsel waives a right for strategic purposes.' * * *

> \* \* \* \* \* \*

> " * * * The rule sought by the State here, however, would make the

trial no more than an appeal from the interrogation; and the 'right to use counsel at the formal trial [would be] a very hollow thing [if], for all practical purposes, the conviction is already assured by pretrial examination.' In re Groban, 352 U.S. 330, 344 [77 S.Ct. 510, 519, 1 L.Ed.2d 376] (Black, J., dissenting). 'One can imagine a cynical prosecutor saying: "Let them have the most illustrious counsel, now. They can't escape the noose. There is nothing that counsel can do for them at the trial." ' Ex parte Sullivan, D.C., 107 F.Supp. 514, 517–518." (Footnote omitted).

■ The intended application of the right to the presence of counsel during police interrogation was made clear and specific. Since admissions were elicited from Magoon at what the Supreme Court in *Escobedo* at 486, 84 S.Ct. at 1762 clearly held was "a stage surely as critical as was the arraignment in Hamilton v. Alabama," he was as fully entitled to have "counsel at his side" during the police interrogation in Major Rome's office. Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

■ No significant weight can be given to the fact that Magoon was permitted to talk with his lawyer over the telephone.⁴ It was meaningless for Major Rome to make a great show of permitting Magoon to retain a lawyer and talk with him on the telephone, and at the same time ignore the existence of that lawyer-client relationship. When Magoon's lawyer asked Major Rome to cease the interrogation until he was present, he spoke in behalf of his client as effectivly as if he had been present; he did not have to be in constant attendance in order to maintain the lawyer-client relationship. In affirming the exclusion of statements made by a crim-

4. It was noted in *Escobedo* that "[a]lthough there is testimony in the record that petitioner and his lawyer had previously discussed what petitioner should do in the event of interrogation, there is

no evidence that they discussed what petitioner should, or could, do in the face of a false accusation that he had fired the fatal bullets." 378 U.S. at 485 n. 5, 84 S.Ct. at 1762.

inal defendant in the absence of his lawyer, Chief Judge Fuld stated for the New York Court of Appeals in People v. Gunner, 15 N.Y.2d 226, 231–232, 257 N.Y.S.2d 924, 928, 205 N.E.2d 852, 855 (1965), "Surely, where a person is rep-represented by counsel, whether or not the police may question him in the absence of his attorney should not turn on whether the latter presents himself at the place where his client is in physical custody and expressly requests the opportunity to consult with him." As he said, this would be "a mechanical and arbitrary requirement * * *." *Id.*[5] I agree. I hold, therefore, that once an attorney representing a suspected felon upon whom investigation has focused contacts the police officer in whose charge he is held and informs him that he does not want him interrogated further, to admit into evidence statements thereafter obtained from the accused by police interrogation in the absence of counsel violates the defendant's constitutional rights.

Having decided that it was in violation of Magoon's constitutional rights to admit testimony at his trial of statements made by him after the attorney's request,[6] the question remains whether that error deprived Magoon of a fair trial.[7] In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court stated that

"there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Id. at 22, 87 S.Ct. at 827.

To be held harmless, a constitutional error must surmount an exceedingly high hurdle. The *Chapman* rule requires that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 24, 87 S.Ct. at 828.

▮ It appears from the record that the following statements testified to at trial were elicited from Magoon subsequent to the attorney's request that the interrogation cease: (1) that he could not confess to all 13 fires but "more likely two"; (2) that he had started the two fires with cigarettes; and (3) his verbal reaction "Keep quiet, you will send us both to jail" when his wife told the police in his presence of Magoon's change in sexual activity at the time of the fires. See p. 1016 *supra.*

It would be difficult to declare that the testimony about these statements at trial was harmless, when compared with the other evidence in the case: circumstantial evidence offered by witnesses; and Magoon's voluntary state-

5. United States v. Braverman, 376 F.2d 249 (2d Cir.), cert. denied, 389 U.S. 885, 88 S.Ct. 155, 19 L.Ed.2d 182 (1967), is different. In that case Braverman attempted to call his lawyer before interrogation but could not reach him. As the court stated, "In contrast to the *Escobedo* case, the prosecution here did nothing to interfere with Braverman's right or access to counsel." 376 F.2d at 252.

6. The Supreme Court of Connecticut stated, "No error is assigned in the admission into evidence, before the jury, of testimony by any of the police officers concerning the questioning of the defendant. Exceptions were taken only to rulings on such testimony at the hearing on the motion to suppress." State v. Magoon, *supra* at 17, 240 A.2d at 857. How-

ever, the motion to suppress, heard during the course of the trial in the absence of the jury, was sufficient to save the point. See Waldron v. United States, 95 U.S. App.D.C. 66, 219 F.2d 37, 40–42 (1955); United States ex rel. De Negris v. Menser, 247 F.Supp. 826 (D.Conn.1965), aff'd, 360 F.2d 199 (2d Cir. 1966); cf. Douglas v. Alabama, 380 U.S. 415, 422–423, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). "[R]eiterated insistence upon a position which the judge has once considered and decided" is not necessary. Keen v. Overseas Tankship Corp., 194 F.2d 515, 519 (2d Cir. 1952), cert. denied, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952).

7. *See generally* Note, Harmless Constitutional Error, 20 Stan.L.Rev. 83 (1967).

ment that the fires were started by someone with a profit motive, which may well have been taken by the jury as Magoon's theory of the crime rather than as an admission that *he* was the one with the motive. Weighing the improperly admitted evidence with the other evidence in this case, I conclude that the error was not harmless beyond a reasonable doubt. *Cf.* Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

Accordingly, the writ is sustained, and it is

Ordered that the petitioner be discharged from custody unless, within twenty (20) days from the date of this opinion and order, the State of Connecticut vacates the judgment of conviction, reinstates petitioner's plea of not guilty, and schedules an early retrial.

This order will be stayed to allow for an appeal by respondent, if one is taken. To obviate any further delay this court hereby grants the certificate of probable cause required by 28 U.S.C. § 2253.