UNITED STATES of America,

v.

Dennis WEDRA, Defendant.

No. 72 Cr. 420.

United States District Court,
S. D. New York.

June 5, 1972.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, New York City, for the United States; Walter M. Phillips, Jr., Asst. U. S. Atty., of counsel.

Gilbert S. Rosenthal, New York City, for defendant.

OPINION

EDWARD WEINFELD, District Judge.

The defendant Dennis Wedra, one of four defendants charged with conspiracy to obstruct justice, moves to suppress oral statements made to a supervising federal narcotics agent following defendant's surrender and arrest upon the ground he was deprived of his right to counsel at the time of his questioning.

The indictment was returned and filed in the afternoon of April 10, 1972. That evening federal narcotics agents sought to execute the warrant for Wedra's arrest at his home. However, he was then at his lawyer's office on a business transaction, where he was apprised by his mother or wife of attempts to execute the warrant of arrest. His attorney then notified the federal authorities that defendant was ready to submit to arrest at his office, where at about 11 p. m., agents, led by Group Supervisor John Lepore, appeared. Lepore arrested the defendant and advised him of his constitutional rights pursuant to the *Miranda* rule,[1] whereupon the defendant said his attorney had already informed him of his rights. The attorney then handed the agents a letter which, after stating that he represented Wedra, continued, "[p]lease be further advised that the above named individual is not to be questioned or interrogated in any manner or about any subject without the undersigned being present." The agents had no purpose to question the defendant since they were only the arresting officers and not in charge of the case. At about 11:30 p. m. they took defendant from his lawyer's office to 90 Church Street, New York City, the office of the Bureau of Narcotics and Dangerous Drugs, arriving there close to midnight. His lawyer followed in a car, reaching that office about five minutes later. Lepore informed the attorney that Wedra was being processed—that is, fingerprinted, photographed and his pedigree taken; that he had no intention of questioning him, and upon completion of the processing he would be taken to West Street Detention Headquarters overnight for safekeeping. However, previously Agent Lepore had notified District Associate Regional Director Anthony Pohl, the agent in charge of the investigation,

of defendant's arrest, and Pohl, together with Agent Reilly, appeared at the Bureau office between 12:45 and 1 a. m. on April 11 to question Wedra. But ten minutes before their arrival Wedra's attorney, who was unaware that Pohl and Reilly had been called, had left to return to his office, where he was to remain overnight.[2] Up to this time the defendant had made no statement regarding the facts of the case. Before the attorney left he advised his client not to answer questions. He also told Lepore he did not want his client questioned in his absence; that if it was planned to question him he could readily be reached at his office and would be available to be present at any interrogation. The attorney testified he was assured by Lepore his client would not be questioned, which Lepore denied. Upon this disputed issue I find that such assurance was indeed given. Moreover, even absent such affirmative assurance, the record is clear, if indeed it is not virtually conceded, that the attorney was misled into leaving his client as a result of Lepore's statement to the lawyer that he had no intention to question his client and that upon completion of the processing the defendant would be taken to West Street for overnight lodging.

As stated, about ten minutes after the attorney left, Pohl and Reilly appeared on the scene, and Lepore was present throughout the events that followed. The processing had already been completed. Lepore did not show them the attorney's letter that his client was not to be questioned in his absence.[3] He did tell them, however, that the attorney had been there and had advised his client not to answer any questions. Nonetheless, Pohl, after giving the defendant the *Miranda* warning, asked him if he cared to make any statement, to which he replied in the negative; nonetheless, Pohl

---

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The attorney's home was located approximately 60 miles from New York City, and he decided to stay at his office overnight.

3. This knowledge, however, may be imputed to Pohl. *Cf.* Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1972). "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done."

continued to question him. He then asked the defendant to look at some photographs. When the defendant responded that he recognized a person, Pohl put a series of questions to Wedra and elicited statements from him that he had gone to certain premises with the man whose photograph he recognized, one of the alleged co-conspirators not named as a defendant, and admittedly a material government witness. Apparently, the government will contend that some of Wedra's answers as to the circumstances of his meeting with the co-conspirator were false exculpatory statements that offered an innocent explanation for his association with him.[4] It is these answers or statements which the defendant seeks to suppress. on the ground that upon the facts and circumstances here presented the defendant was deprived of his right to counsel in violation of the Sixth Amendment.

■ Was Pohl's questioning of the defendant under the circumstances here presented in contravention of Wedra's constitutional right to counsel under the Sixth Amendment? There can be no question that the defendant had previously been advised of his right against self-incrimination and his right to have counsel present at any interrogation. He had been so advised by his lawyer, by Lepore when arrested, and later by Pohl. The question, however, is whether, aware of his rights, he voluntarily,

intentionally and intelligently waived his right to counsel[5] when interrogated by Pohl.

■ The courts indulge every reasonable presumption against the waiver of fundamental constitutional rights.[6] The burden of proof is upon the government to establish a waiver of one's constitutional rights.[7] While recent authority holds that the burden of persuasion is by a fair preponderance of the evidence,[8] nonetheless it is a "heavy burden,"[9] since what is at issue is a claimed surrender of basic constitutional rights.[10] Upon the facts here presented, I am satisfied the government has failed to establish that the defendant made that "sentient" choice which is the hallmark of a knowing and intelligent waiver of a constitutionally protected right—in this instance, his right to already retained counsel at his interrogation.[11]

This case in some respects is a variant of Escobedo v. Illinois.[12] There the authorities, aware a suspect had retained an attorney, engaged in custodial interrogation of him, and refused to permit the attorney to be present at his questioning, although both sought this. Here, the authorities, aware defendant had an attorney, and also that he had already advised his client to exercise his Fifth Amendment right to remain silent, effectively deprived the defendant of his right to the presence of counsel by assurances that the client would not be

---

4. The interrogation extended over a 45 minute period and Wedra was delivered to West Street at about 3 a. m.

5. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). See also Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); cf. United States v. Harrison, 451 F.2d 1013 (2d Cir. 1971) (per curiam).

6. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States v. Drummond, 354 F.2d 132, 148 (2d Cir. 1965), cert. denied, 384 U.S. 1013, 86 S.Ct. 1968, 16 L.Ed.2d 1031 (1966).

7. Miranda v. Arizona, 384 U.S. 436, 473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); cf. United States v. Fernandez, 456 F.2d 638, 640 (2d Cir. 1972) (consent to search and seizure).

9. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

10. See Lego v. Twomey, 404 U.S. 477, 479 n.1, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). "Two federal courts have held as an exercise of supervisory power that voluntariness must be proved beyond a reasonable doubt."

11. Cf. Haley v. Ohio, 332 U.S. 596, 601, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (concurring opinion).

12. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964).

questioned, whereupon the attorney left his client, whereas in fact the authorities intended to and did question the defendant in the absence of his counsel. "Just as surely as in *Escobedo*, the law officers here prevented the defendant's attorney from consulting with his client. Neglect to notify counsel of a planned interrogation is as effective in preventing consultation as the physical barrier which confronted Escobedo's attorney at the jail house door." [13]

The government contends, however, that since the defendant had been advised of his rights, he necessarily voluntarily answered Inspector Pohl's questions in the absence of counsel. It urges his responses were calculated to exculpate himself. However, whether the alleged answers were inculpatory or exculpatory does not resolve the basic issue of waiver.[14] The facts suggest the government's approach is unrealistic. When the lawyer left his client upon assurances there would be no questioning, the defendant had been in custody for several hours. Up to that point he had not been questioned, he had made no statement, and it was clear that he was intent upon exercising his Fifth Amendment right against self-incrimination. Despite his response to Pohl that he did not care to make any statement, his wishes were disregarded, pictures were shown to him and the interrogation was carried on for forty-five minutes in the absence of his known counsel. This questioning of Wedra under the circumstances was in derogation of his right to have counsel present. His answers after his initially stated desire to remain silent alerted Pohl and the other agents to the fact that he had assumed contradictory positions. Considering the hour, the period of time that had elapsed since his arrest, that he was in "an extremely nervous state" and "very scared," the agents, before proceeding, should not only have emphasized his right to have his counsel present, but also have questioned him "to determine whether his apparent change of position was the product of intelligence and understanding, or of ignorance and confusion," [15] or due to a state of apprehension. No such further inquiry was made —on the contrary, the interrogation continued.

Not only was Wedra's wish not to make any statement disregarded, but, as already indicated, assurances previously given his lawyer that he would not be questioned were violated and the request ignored that his lawyer be notified so he could be present at any interrogation. When the lawyer left the narcotics office upon those assurances, he "spoke in behalf of his client as effectivly [sic] as if he had been present; he did not have to be in constant attendance in order to maintain the lawyer-client relationship."[16] Just as the right to counsel does not depend on a request,[17] so, too, once counsel has been retained and he is known to the interrogators, the right to have him present does not depend upon the accused asserting a formal demand for his presence, at least where, as here, the interrogators have already been advised that the client is not to be questioned in the absence of counsel and they have given assurances to that effect.[18]

13. Coughlan v. United States, 391 F.2d 371, 375 (9th Cir.), (Hamley, C. J., dissenting), cert. denied. 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968).

14. *Cf.* Miranda v. Arizona, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

15. United States v. Nielson, 392 F.2d 849, 853 (7th Cir. 1968).

16. United States ex rel. Magoon v. Reincke, 304 F.Supp. 1014, 1018 (D.Conn. 1968), aff'd, 416 F.2d 69 (2d Cir. 1969).

17. Miranda v. Arizona, 384 U.S. 436, 470, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ; Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

18. *See* Mathies v. United States, 126 U.S. App.D.C. 98, 374 F.2d 312, 316 (1967), where the present Chief Justice stated that "[t]he prospective application of [Miranda] . . . plainly will require that such interrogations [of defendants represented by counsel] can be conducted only after counsel has been given an op-

Mere silence of an accused does not suffice to constitute a waiver of constitutional rights.[19]  In end result, the action of the officers effectively prevented the attorney from advising his client, thereby violating his right to the assistance of counsel under the Sixth Amendment [20]—assistance which indeed was required if the defendant was intelligently and knowingly to surrender his Fifth Amendment privilege to remain silent.  The failure of the authorities to call defendant's attorney was tantamount to a denial of a request by defendant for his attorney as articulated by the attorney.  It "undermined his ability to exercise the privilege—to remain silent if he chose or to speak without any intimidation, blatant or subtle."[21]

The procedural safeguards to protect essential constitutional rights intended under the *Miranda* and *Escobedo* rules would become empty ritual and would be seriously undermined if the practice here indulged in were permitted.  Under the totality of the facts here presented, to permit the use by the prosecution of the statements obtained thereunder would be a wooden application of those rules and violative of their basic purposes.

In sum, I find that the defendant did not "voluntarily, knowingly and intelligently," as required by *Miranda* [22] waive his right to the presence of his counsel at the interrogation by Pohl.

■  Moreover, apart from the denial of the right to counsel, Wedra's rights

---

portunity to be present." *See also* Queen v. United States, 118 U.S.App.D.C. 262, 335 F.2d 297 (1964).

19.  Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ; Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) ; Rice v. Olson, 324 U.S. 786, 788–789, 65 S.Ct. 989, 89 L.Ed. 1367 (1945).

20.  *Cf.* Miranda v. Arizona, 384 U.S. 436, 465–466, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

21.  Miranda v. Arizona, 384 U.S. 436, 466, 86 S.Ct. 1602, 1623, 16 L.Ed.2d 694 (1966).  Here, the display to Wedra of the photograph of the co-conspirator acted as such a form of subtle intimidation, undermining his resolve to remain silent.  At this critical juncture, the absence of counsel was a decisive factor in what followed.

22.  384 U.S. at 444, 86 S.Ct. 1602.  The Seventh Circuit held in United States v. Smith, 379 F.2d 628, 633, cert. denied, 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486 (1967) : "[I]n post-*Miranda* cases, the *Miranda* rule applies with *greater* force to preclude as unconstitutional the admission of statements resulting from in-custody interrogation *after known retainer or appointment of counsel* and without counsel's presence or approval, unless it very clearly appears that the accused deliberately and understandingly chose to forego the assistance of counsel at such interrogation." [emphasis in original].  *See also* United States v. Crisp,

435 F.2d 354, 357 (7th Cir. 1970), cert. denied, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971) ; United States v. Priest, 409 F.2d 491 (5th Cir. 1969).  In *Crisp*, the defendant persisted in his self-initiated questioning by FBI agents in the absence of his lawyer after being reminded that he was represented by counsel and had the right to the presence thereof.  Similarly, in Reinke v. United States, 405 F.2d 228 (9th Cir. 1968), the defendant made the conscious choice to speak to an agent in the absence of his attorney ; in United States v. Tucker, 435 F.2d 1017 (9th Cir. 1970), cert. denied, 401 U.S. 976, 91 S.Ct. 1197, 28 L.Ed.2d 325 (1971), after defendant requested an interview, the Assistant United States Attorney expressly inquired whether defendant wanted his attorney to be present, and in United States v. Fellabaum, 408 F.2d 220, 225 (7th Cir.), cert. denied, 396 U.S. 858, 90 S.Ct. 125, 24 L.Ed.2d 109 (1969), the defendant "deliberately and affirmatively asserted that he did not want to have his counsel present after receiving full warnings as to his rights." *See also* Arrington v. Maxwell, 409 F.2d 849 (6th Cir.), cert. denied, 396 U.S. 944, 90 S.Ct. 381, 24 L. Ed.2d 245 (1969).  It is significant that, in holding that the defendant waived his right to remain silent in United States v. Melville, 309 F.Supp. 745, 748 (S.D.N.Y. 1970), Judge Pollack stated: "The FBI was not at any time notified that Melville was not to be interrogated in the absence of a lawyer. . . . ."

were violated in that his desire to remain silent was disregarded when Pohl persisted in his efforts after Wedra stated he wished to make no statement. "[I]f the individual is alone and indicates in any manner he does not wish to be interrogated, the police may not question him." [23] When defendant told Pohl he did not wish to make any statement, the interrogation should have ended. This situation appears to fall particularly within the reiterated mandate of *Miranda* that "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease." [24]

■ Entirely apart from a finding that defendant did not waive his constitutional right to counsel and to remain silent, I would suppress the statements upon another ground—the court's supervisory power over the administration of justice. The combination of events here warrants a finding that the interrogation took place under deceptive auspices. While Lepore acknowledges he had no intention to question defendant and that his function was simply to execute the arrest warrant, he was the one who received the written notice that defendant was not to be questioned in the absence of counsel; he knew defendant had been advised not to answer questions except in the presence of his counsel; he represented that following the completion of processing defendant would be taken to West Street; he knew of the attorney's request that if there were to be any questioning the attorney was available to return forthwith to be present during such questioning. While it may be contended that Pohl was free of any restrictions insofar as questioning the defendant is concerned, Lepore was present when Pohl interrogated the defendant, and at no time prior thereto or during the interrogation did he suggest to Pohl that the attorney be so notified in accordance with this own prior representations. The totality of this conduct was unfair and overreaching, and the government should not be the beneficiary thereof. While, to be sure, government attorneys did not participate in the questioning of the defendant, who was known to be represented by an attorney, which would have been a violation of the Canons of Professional Ethics,[25] the simple fact is that the agents are government employees.[26]

I see little point in well-intentioned utterances denouncing in-custody interrogation of an accused person known to be represented by counsel without affording counsel an opportunity to be present, or in condemning prosecuting attorneys who take part in such interrogation in violation of professional ethics and then allowing the government to become the beneficiary of the condemned conduct.[27] The only effective way to

---

23. Miranda v. Arizona, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

24. Miranda v. Arizona, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966). Unlike United States v. Collins, 462 F.2d 792 (2d Cir. 1972), where the defendant was asked to reconsider his prior declinations to discuss his case, here there was no such request; instead, the interrogator failed to follow the *Miranda* requirement to desist and continued the interrogation without interruption.

25. *See* Canon 9. *See also* Code of Professional Responsibility, Ethical Consideration 7–18 and Disciplinary Rule 7–104.

26. *Cf.* Santobello v. New York, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

27. *See, e. g.,* United States v. Four Star, 428 F.2d 1406, 1407 (9th Cir.) (per curiam), cert. denied, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970); Coughlan v. United States, 391 F.2d 371, 372 (9th Cir.), cert. denied, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968). *But see* Jones v. United States, 119 U.S. App.D.C. 284, 342 F.2d 863, 871 (1964) (en banc); Lee v. United States, 322 F.2d 770, 777–778 (5th Cir. 1963). This Circuit, while it has not ruled definitively upon the issue, has characterized the "[i]nterrogation of an accused in the ab-

terminate this unfair and at times unethical practice is to prohibit the government from using its illicit fruits.

Accordingly, the motion to suppress the statements is granted.

sence of counsel after arraignment . . . [as] suspect." United States v. Massimo, 432 F.2d 324, 325 (2d Cir. 1970), cert. denied, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 633 (1971).