UNITED STATES of America, Plaintiff,

v.

Bernard HOWARD, Defendant.

No. CR–75–151.

United States District Court,
W. D. New York.

Feb. 11, 1977.

---

**2.** A participant may be disqualified for a period up to three years. 7 U.S.C. § 2020; 7 C.F.R. § 276.6(a) (1976).

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Richard E. Mellenger, Buffalo, N. Y., of counsel), for the Government.

James C. Heaney, Buffalo, N. Y., for defendant.

CURTIN, District Judge.

Defendant Bernard Howard is presently under indictment for the April 18, 1975 robbery of the Black Rock-Riverside Savings and Loan Association, in violation of 18 U.S.C. § 2113(a). Defendant has now moved to suppress certain identification testimony and evidence as well as oral statements and other information given to the Buffalo Police and agents of the F.B.I. Defendant also seeks production of certain statements, including grand jury testimony, of the witnesses to this incident.

A Wade hearing was conducted on June 4, 1976. The hearing was continued on September 13, 1976, when the issue of the voluntariness of statements made by defendant to law enforcement officials was also addressed. Defendant, upon advice of counsel, was not present at either hearing. Counsel indicated that, because identification issues were being considered, defendant had decided that it was to his advantage not to appear at the hearings and that defendant, through counsel, waived his right to be present at the hearings.

Testimony presented at the suppression hearings revealed the following facts. At approximately 11:15 a. m. on April 18, 1975, the Black Rock-Riverside Savings and Loan Association located on Amherst Street in Buffalo, New York was robbed by a single individual. A bank employee who had observed the robbery and escape reported a description of the robber, the escape vehicle and the vehicle's license plate number to the police. Within one hour of the robbery, Buffalo police apprehended a suspect and vehicle which fit the description reported by the bank employee. The suspect was taken

to the bank immediately. Upon arrival at the bank, the suspect, who was handcuffed and surrounded by law enforcement officials, some of whom were uniformed, was observed in show-up fashion by three employees of the bank. All three employees immediately identified the suspect, who was then dressed differently from the individual who had robbed the bank, as the robber. The individual who was so identified was the defendant, Bernard Howard.

At the time that the defendant was apprehended, he was given proper *Miranda* warnings by the arresting officer. Defendant initially denied involvement in the robbery, but shortly thereafter defendant made certain admissions to the police with respect to it.

Following the show-up identification at the bank, defendant was again advised of his *Miranda* rights. En route from the bank to police headquarters, defendant conversed further with police officials. At police headquarters, defendant was again given *Miranda* warnings by the Buffalo police. Defendant was then interrogated further by Buffalo police and F.B.I. Agent Joseph Wenger. Defendant made further admissions and he agreed to show these law enforcement officials where the money taken in the robbery was hidden. With defendant's guidance, this money was then recovered.

Following defendant's return to police headquarters, Attorney James C. Heaney appeared and advised police officials that he had been retained by defendant's mother to represent defendant. Defendant, apparently unaware of arrangements made by his mother, indicated to police that he had no attorney. After some initial disagreement, Attorney Heaney was given the opportunity to speak with the defendant. The hearing record indicates that, to this point, defendant had not requested the assistance of counsel.

After this conversation with Mr. Heaney, defendant then refused to sign a statement which had previously been taken by the Buffalo police. Apparently no further interrogation occurred at police headquarters.

Agent Wenger then took defendant to F.B.I. headquarters for processing. Agent Wenger again advised defendant of his *Miranda* rights. Defendant indicated that he understood the warnings, but defendant refused to sign the standard "Advice of Rights" form.

During processing at F.B.I. headquarters, defendant's counsel, Mr. Heaney, telephoned Agent Wenger. Mr. Heaney spoke with defendant briefly. Mr. Heaney then advised Agent Wenger that he was not to interview defendant further.

Following this telephone conversation, Agent Wenger then told defendant:

Your attorney doesn't want you to discuss this but I am going to ask you questions anyway and if you don't want to answer, you don't have to, but if you want to, you can.

(Hearing Tr. at 107).

Defendant was not advised further of his right to have counsel present, nor did defendant specifically indicate that he did not wish to have counsel present. In response to Agent Wenger's questions, defendant then made certain admissions concerning his involvement in the bank robbery under investigation. During this interrogation, defendant apparently made no request for counsel, nor did he ever refuse to answer any questions posed by Agent Wenger.

Defendant asserts that the identification procedures used at the bank shortly after the robbery were highly suggestive and improper and that all identification testimony and evidence based on this show-up should therefore be suppressed. I cannot agree with this conclusion.

It has been recognized that a defendant has no right to counsel at on-the-scene identifications made prior to the institution of formal criminal proceedings against him. *United States ex rel. Gomes v. State of New Jersey,* 464 F.2d 686 (3d Cir. 1972); *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The right-to-counsel rule of *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. Califor-*

*nia,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), therefore does not preclude admitting the identification testimony at trial.

Even though the defendant had no right to counsel at the on-the-scene confrontation, that identification evidence may be suppressed if the identification procedures were so unnecessarily suggestive *and* so conducive to irreparable mistaken identification that defendant was denied due process of law. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Kirby v. Illinois, supra.*

In this case it is clear that the defendant was not shown in a lineup with other people. He was escorted into the bank by uniformed policemen. The suspect was handcuffed at the time. The witnesses had been told that a suspect was being brought to the bank and that they would be asked to attempt to make an identification. Three bank employees viewed the suspect in one-on-one confrontations and all identified the defendant, Bernard Howard, as being the person who had robbed the Savings and Loan that day.

■ One-man show-ups that are conducted shortly after a crime has been committed are not per se violative of due process and evidence obtained through use of such an identification procedure is not necessarily inadmissible. *United States v. Kaylor,* 491 F.2d 1127, *rehearing granted* 491 F.2d 1133 (2d Cir. 1973), *vacated on other grounds sub nom. United States v. Hopkins,* 418 U.S. 909, 94 S.Ct. 3201, 41 L.Ed.2d 1155 (1974); *United States ex rel. Springle v. Follette,* 435 F.2d 1380 (2d Cir. 1970), *cert. denied sub nom. Springle v. Zelker,* 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 331 (1971); *United States v. Savage,* 470 F.2d 948 (3d Cir. 1972), *cert. denied,* 412 U.S. 930, 93 S.Ct. 2759, 37 L.Ed.2d 158, *rehearing denied,* 414 U.S. 883, 94 S.Ct. 169, 38 L.Ed.2d 132 (1973); *Spencer v. Turner,* 468 F.2d 599 (10th Cir. 1972), *cert. denied,* 410 U.S. 988, 93 S.Ct. 1520, 36 L.Ed.2d 187 (1972).

Under the guidelines established by the Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the question that must be answered is: under the "totality of the circumstances," were the identifications reliable even though the confrontation procedure may have been suggestive? The evil to be avoided is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

■ I have examined the record with care and I am convinced that, while the identifications of the defendant in the bank may have been suggestive, the procedures relied on in this instance were not conducive to misidentification under the criteria set forth in *Neil v. Biggers, supra,* 409 U.S. at 199–200, 93 S.Ct. 375.

Following the reporting of the robbery, the police quickly apprehended a suspect and immediately took him to the bank. The suspect, his automobile and the license plate number all matched the descriptions provided by an eyewitness who had observed the suspect fleeing from the bank. The length of time between the crime and the show-up was approximately one hour. Each witness had an opportunity to view the suspect at close range during the robbery and the full attention of each witness was riveted on the suspect during the entire time that the robbery was in progress, a period of three to five minutes. There was some variation in the descriptions of the suspect offered at the hearing, but the discrepancies were not so significant as to require that any witnesses' identification testimony should be suppressed based on this factor alone. Neither party explored the descriptions which the witnesses had given to police following the robbery and prior to the show-up. When the suspect was taken into the bank, each witness was separated from the other two so that the risk of mutual reinforcement was avoided. And, finally, none of the witnesses hesitated when they viewed the suspect in the bank show-up; each made an immediate, positive identification of the defendant as the individual who had robbed the bank a short time before.

Under these circumstances, I do not believe that the show-up created a substantial

likelihood of irreparable misidentification. I must conclude that, even if the one-on-one confrontation procedure was suggestive, under the test of *Neil v. Biggers, supra,* the identifications were reliable and are therefore admissible at trial. *See United States ex rel. Cummings v. Zelker,* 455 F.2d 714 (2d Cir. 1972), *cert. denied,* 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d 128 (1972); *United States ex rel. Frasier v. Henderson,* 464 F.2d 260 (2d Cir. 1972).

Defendant next claims that all oral statements of the accused given to the Buffalo police should be suppressed because *Miranda* warnings were inadequate. Since I find on the hearing record that proper *Miranda* warnings were given to defendant by the Buffalo police on several occasions and that there is no indication that defendant failed to understand these warnings, I must conclude that this claim is without merit. *See United States v. Floyd,* 496 F.2d 982, 988–89 (2d Cir.), *cert. denied sub nom. Miller v. United States,* 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974).

Of greater consequence is defendant's claim that information obtained from him by F.B.I. Agent Wenger, in Attorney Heaney's absence, should be suppressed. As the record indicates, Agent Wenger continued to interrogate the defendant even after Mr. Heaney explicitly informed Mr. Wenger that he was not to question the defendant further.

I find this practice to be constitutionally objectionable. All evidence which was a product of continued interrogation of the defendant by Agent Wenger, in Attorney Heaney's absence, may not be admitted into evidence at trial.

The constitutional basis for this ruling was recognized in *United States ex rel.*

*Magoon v. Reincke,* 304 F.Supp. 1014, 1019 (D.Conn.1968), *aff'd* 416 F.2d 69 (2d Cir. 1969):

> [O]nce an attorney representing a suspected felon upon whom investigation has focused contacts the police officer in whose charge he is held and informs him that he does not want him interrogated further, to admit into evidence statements thereafter obtained from the accused by police interrogation in the absence of counsel violates the defendant's constitutional rights.

*See also United States v. Wedra,* 343 F.Supp. 1183 (S.D.N.Y.1972); *People v. Arthur,* 22 N.Y.2d 325, 329, 292 N.Y.S.2d 663, 666, 239 N.E.2d 537 (1968).[1]

■ The record demonstrates that, after Attorney Heaney entered the case, defendant refused to sign a statement which had previously been taken by Buffalo police. He did not answer any further questions in Buffalo Police Headquarters and he refused to sign the F.B.I.'s Advice of Rights form. These facts, coupled with the explicit instruction given by Mr. Heaney to Mr. Wenger, lead me to conclude that the Government has failed to meet its heavy burden of demonstrating that the defendant voluntarily, knowingly and intelligently waived his privilege against self-incrimination and his right to have counsel present during further questioning by Agent Wenger. *See Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Such continued interrogation of the defendant by a Government agent would appear to raise ethical questions as well.[2] As the Tenth Circuit Court of Appeals has recognized:

---

1. Even those courts which have found custodial interrogation, in the absence of and without the permission of counsel, to be technically permissible, have expressed their disapproval of this practice. *United States v. Cobbs,* 481 F.2d 196, 200 (3d Cir. 1973), *cert. denied,* 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973); *Coughlan v. United States,* 391 F.2d 371, 372 (9th Cir.

1968), *cert. denied,* 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968).

2. The American Bar Association, Code of Professional Responsibility, DR 7–104(A)(1) provides:

> During the course of his representation of a client a lawyer shall not:

[O]nce a criminal defendant has either retained an attorney or had an attorney appointed for him by the court, any statement obtained by interview from such defendant may not be offered in evidence for any purpose unless the accused's attorney was notified of the interview which produced the statement and was given a reasonable opportunity to be present. To hold otherwise, we think, would be to overlook conduct which violated both the letter and the spirit of the canons of ethics. This is obviously not something which the defendant alone can waive.

*United States v. Thomas,* 474 F.2d 110, 112 (10th Cir. 1973), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973). *See also United States v. Durham,* 475 F.2d 208, 211 (7th Cir. 1973). Even if there had been a voluntary and intelligent waiver of fifth amendment rights by defendant, I would not allow this contested evidence to be admitted at trial, based on the circumstances of this case, because the Government failed to advise defendant's counsel of the continued interrogation and refused to heed counsel's directive that interrogation should not proceed in his absence.

Defendant's final claim is that the Government should be compelled to supply him with prior statements of prosecution witnesses for his use in cross-examination at a pretrial suppression hearing. While I have encouraged the Government to produce the statements requested by defendant's counsel as a matter of fairness and justice, I do not have the authority to require production of such statements at this time. *See United States v. Sebastian,* 497 F.2d 1267 (2d Cir. 1974).

So ordered.

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or by law is authorized to do so.