Phillip MARTLEY, Petitioner,

v.

Peter A. DOUGLAS, Warden, et al., Respondents.

No. CIV–77–0688–D.

United States District Court,
W. D. Oklahoma.

Nov. 14, 1977.

Phillip Martley, pro se.

Larry Derryberry, Atty. Gen., by Midge Martin McGee, Asst. Atty. Gen., Oklahoma City, Okl., for respondents.

### ORDER

DAUGHERTY, Chief Judge.

Phillip Martley, an inmate at the Lexington Regional Treatment Center, Lexington, Oklahoma, has petitioned this court for writ of habeas corpus pursuant to Title 28, United States Code, Section 2254. In his Petition he alleges as grounds for relief:

1. "Denial of fair and impartial trial by Trial Court, by allowing illegal obtained evidence to go to the Trial Jury, thus denying this Petitioner a fair and impartial trial."

2. "Denial of right to assistance of counsel, during the crucial states and investigative stages."

3. "Trial Court erred by overruling his motion to strike purported surplusage from the information."

4. "Trial Court erred by allowing the prosecutor to elicit irrelevant and immaterial evidence on direct examination, evidence outside the scope of the offense for which defendant was being prosecuted, and remote to the events which transpired."

Respondents have filed their answer together with the records of petitioner's trial and of the proceedings on his application for post conviction relief. Petitioner has filed a "Motion for Rebuttal to Respondents Response".

The court has examined all the records submitted to the court and it appears there-

from that in the District Court of Garfield County, case No. CRF–72–1246 the petitioner was charged and tried for the offense of Murder and convicted by a jury of the lesser offense of Manslaughter in the First Degree. His punishment was fixed at 35 years imprisonment. A direct appeal was perfected in the Oklahoma Court of Criminal Appeals. Included in the Assignments of Error were the contentions that the trial court should have stricken from the Information a reference to the knife which was the instrument used to effect the death of the deceased, that the switchblade knife should have been suppressed and not received in evidence by the trial court, and that the trial court erred in allowing the prosecutor to elicit irrelevant and immaterial evidence on direct examination, evidence outside the scope of the offense for which petitioner was being prosecuted and remote to the events which transpired on the date of the homicide. On February 25, 1974, the appellate court affirmed the judgment and sentence of the trial court. *Martley v. State*, Okl.Cr., 519 P.2d 544 (1974). Thereafter, in March, 1977, the petitioner filed an application in the sentencing court for post conviction relief in which he asserted that his sentence was excessive and that the knife which was received into evidence had been obtained by trickery and deception in violation of his constitutional rights. The application was denied in the district court on April 25, 1977. The petitioner then appealed to the Oklahoma Court of Criminal Appeals which on May 24, 1977, affirmed the Order of the sentencing court denying post conviction relief.

■ The respondents admit the petitioner has exhausted his State remedies except as to his second claim of denial of counsel. It is true that this contention was not separately stated to the Oklahoma courts in the precise language here presented. However, the thrust of both his first and second claims is that his conviction was obtained through the use in evidence of the knife which was located as the result of an unlawful police interrogation. This issue has been fairly presented to the state courts at trial, on direct appeal and in the post conviction proceedings. The court concludes therefore that the petitioner has exhausted the remedies available to him in the State of Oklahoma.

After testimony at the trial established that the deceased had been stabbed by the petitioner and prior to the time that the knife was offered and received in evidence the trial court conducted in the course of the trial, out of the presence of the jury, a hearing on the defendant's Motion to Suppress. The offense occurred in the early morning hours of December 17, 1972. The petitioner was taken into custody that morning and at the Enid Police Station, Sergeant Don Davis, Enid Police Department, advised him of his Miranda rights. The petitioner then declined to make any statement and informed the officer that he wanted to talk to an attorney first. Davis did not question him further and the petitioner was offered a telephone call. He did not call an attorney at the time but did call his stepfather. This interview apparently occurred about 5:30 or 6 o'clock in the morning.

Several hours later the stepfather, Rawleigh Webster, called Ray Pickle, Undersheriff of Garfield County, with whom he was acquainted to see if he could see the petitioner who had been taken to the county jail. Mr. Pickle testified that he was unaware at the time that the petitioner was in jail but he called the Enid Police Department and talked with Sergeant Davis. He asked him if he had any objection to the stepfather talking to the accused and "they said that they had no objection for him to talk to him, because they had the case pretty well tied up, but that they hadn't found the knife and asked if Rawleigh would ask him where the knife was." (Trial Tr. at 137.) He said that he met Mr. Webster at the jail where they conferred with Sergeant Davis and Captain Graham of the Enid Police Department. He then testified "they asked Mr. Webster if he would ask Phil where the knife was and he said that he will be glad to ask Phil and he said if Phil would tell anybody, that he is quite sure that he would tell him and he would be glad

to cooperate in anyway that he could." (Trial Tr. at 137, 138.) He then accompanied the stepfather to see the petitioner and the stepfather asked the petitioner about the knife. The conversation was in Mr. Pickle's presence and the petitioner told his stepfather:

"I'll tell you if you want me to, Dad." (Trial Tr. at 138.)

According to the undersheriff the stepfather then advised the petitioner "that it would be to your benefit or it would be a good idea, something similar to that, if he would tell him where the knife was." (Trial Tr. at 138.) Petitioner then told him where the knife was located and the undersheriff called Sergeant Davis and gave him the information.

 Mr. Webster testified that he had been asked to learn about the knife from his stepson and that pursuant to this request he asked the petitioner where the knife was. According to him the petitioner's response was:

"First, he didn't want to and then he told me." (Trial Tr. at 154.)

At the conclusion of the hearing the trial judge ruled:

". . . I find from our evidentiary hearing that the conversations had with the defendant while he was in custody with his stepfather, were conversations that were voluntarily given to his stepfather and I fail to find any coercion and I fail to find any conspiracy. I find this young man talked to his stepfather freely, but in the presence of the Undersheriff, who was not interrogating him. This was not an official interrogation and I find more particularly that he previously had been warned of his constitutional rights under the provisions of the Miranda Warning and this young man is twenty-four years of age. He is not without experience. Not in this case, but in other cases and I am aware of that and that, of course, has not been brought to the attention of the jury, like this proceeding here will not be brought to the attention of the jury, and that he has answered to the Warnings, that he understood his rights

and I particularly find that it is not necessary for the police officers to repeat the warning time and time again, if they intend to interrogate him. Here, the Undersheriff did not interrogate him, but just overheard the conversation after the stepfather had offered to the police officers, to assist them and that is what he was doing. Mr. Franklin, I'm inclined to rule that the Motion to Suppress be denied and overruled and exceptions allowed Mr. Martley. Let us now return to the courtroom." (Trial Tr. at 166, 167.)

The hearing conducted by the trial court meets fully the requirements of 28 U.S.C.A. § 2254. Determinations on factual issues after hearing on the merits by a state court and evidenced by written findings, opinion or other reliable and adequate written indicia are presumed to be correct. *Ramirez v. Rodriguez,* 467 F.2d 827 (C.A.10 1972), cert. denied, 410 U.S. 987, 93 S.Ct. 1518, 36 L.Ed.2d 185. A close question of law is presented on the facts developed before the trial court. Cf. *United States v. Brown,* 466 F.2d 493 (C.A.10 1972). However, this court does not deem it necessary to reach the merits of the issue. Assuming, arguendo, that the challenged evidence should have been suppressed, the record clearly shows that any error in its admission was harmless beyond a reasonable doubt. There was never any dispute as to the manner in which the decedent was killed. The defense did not deny the essential fact that petitioner stabbed the decedent, but rather the defense was predicated upon provocation and self-defense. The altercation between the deceased and petitioner was witnessed by at least seven persons. Five of them including one of the petitioner's companions testified for the State. The knife was observed in petitioner's hand. The companion who had been present testified that later upon return to their car that the petitioner stated that he "cut the dude". The testimony of another companion who testified for the defense differed only in emphasis as he indicated the deceased was the aggressor. He also stated that when the petitioner got in the car "he told me that he had knifed the kid." (Trial Tr. at 214.) The chief

8

medical examiner for the State of Oklahoma who had performed an autopsy of the body of the deceased stated there were three stab wounds to the chest and abdomen and one stab wound to the left temple. According to him the abdominal and chest wounds were the cause of death.

In evaluating the constitutional error the standards for review are pointed out by the Court of Appeals for the Tenth Circuit in the recent case of *Twyman v. State of Oklahoma,* 560 F.2d 422, 423 (C.A.10 1977):

"The question is whether there was a reasonable possibility that the error complained of may have contributed to the conviction. *Fahy v. State of Connecticut,* 375 U.S. 85, 86 [84 S.Ct. 229, 11 L.Ed.2d 171] (1963). Error can be held harmless only if the court can declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. State of California,* 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967). In a case such as this, the harmlessness of the alleged error must be assessed in light of the probable impact on the minds of an average jury. *Harrington v. California,* 395 U.S. 250, 254 [89 S.Ct. 1726, 23 L.Ed.2d 284] (1969). We must be convinced, from a review of the trial transcript, that the jury would not have found the state's case significantly less persuasive had the alleged uncounselled misdemeanor convictions not been brought to light. *Bond v. State of Oklahoma,* 546 F.2d 1369, 1376 (10th Cir. 1976)."

With all the evidence provided both by the State and the defense establishing that the petitioner inflicted the stab wounds in the body of the deceased, the introduction of the knife could not have significantly enhanced the State's case and there is no reasonable possibility that the error, if any, contributed to the conviction.

■ The remaining contentions of the petitioner are wholly without merit. The challenge to the Information involved only a question of state law and is not cognizable in this habeas corpus proceeding. Ordinarily a challenge to a state information does not raise a federal constitutional question.

*Reay v. Turner,* 356 F.2d 418 (C.A.10 1966). It is only when the argument rests on lack of notice and due process that a question of constitutional dimension is presented. See *Johnson v. Turner,* 429 F.2d 1152 (C.A.10 1970). No such argument is presented here.

■ Petitioner's final claim amounts to no more than a bald conclusion. He does not specify the particular testimony complained of or allege any underlying facts to support his averment. Bald conclusions by a habeas petitioner are legally insufficient and may be denied without further consideration. *Martinez v. United States,* 344 F.2d 325 (C.A.10 1965). Moreover, mere trial errors are not reviewable by way of federal habeas corpus. *Pierce v. Page,* 362 F.2d 534 (C.A.10 1966). Errors committed by the trial court with respect to admission of evidence can only be reviewed by appeal. *Alexander v. Daugherty,* 286 F.2d 645 (C.A.10 1965); *Schechter v. Waters,* 199 F.2d 319 (C.A.10 1952).

As evidenced by the foregoing analysis there are no material issues of fact which require an evidentiary hearing and the Petition for Writ of Habeas Corpus will be denied.

IT IS SO ORDERED.