Rolly O. KINNELL, Petitioner,

v.

STATE OF KANSAS, et al.,
Respondents.

Rolly O. KINNELL, Petitioner,

v.

Robert A. ATKINS, et al., Respondents.

Nos. 79–3023, 80–3052.

United States District Court,
D. Kansas.

March 24, 1981.

Rolly O. Kinnell, petitioner pro se.

Christopher Y. Meek, Asst. Atty. Gen.,
Topeka, Kan., for respondents.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

Petitioner Rolly O. Kinnell, having been
granted leave to proceed *in forma pauperis*,
has filed with the Clerk of the Court two
petitions for writ of habeas corpus pursuant

to 28 U.S.C. § 2254. The two cases, No. 79–3023 and No. 80–3052, are herein consolidated for all purposes. Rule 42(a), F.R. Civ.P., 28 U.S.C.

Petitioner is currently serving a sentence of three to twenty years in the Kansas State Penitentiary, Lansing, Kansas, by virtue of his conviction in the District Court of Bourbon County, Kansas, on October 6, 1977, upon a jury verdict of guilty of aggravated battery. Petitioner challenges this sentence and conviction on the basis of several alleged errors occurring during the prosecution and trial of the state charge. Specifically, petitioner asserts as constitutional error: (1) the use of an illegal line-up and identification procedure; (2) withholding by the prosecution of evidence favorable to the defense; (3) the prosecution's knowing use of perjured testimony; (4) the introduction of unlawfully seized evidence; and (5) ineffective assistance of counsel. Only the issue of ineffective assistance of counsel was raised on direct appeal. The other issues were raised by *pro se* motion for post-conviction relief in the state courts and rejected without an evidentiary hearing.

After the filing of the petition in Case No. 79–3023 a rule to show cause issued on the claim of ineffective assistance of counsel, the State filed an answer and return, and petitioner filed a traverse. Having considered the pleadings and numerous other filings submitted by petitioner in each case, the response of the State, and the state records, including the transcript of trial, the Court makes the following findings and order.

A brief recital of the circumstances underlying the aggravated assault charge will facilitate our discussion of each of petitioner's claims. On June 27, 1977, in Fort Scott, Kansas; Glen Brown and Mike Fewell were on the porch at the home of Larry Bates drinking and talking with Bates and Linda Adams when Rolly Kinnell stopped at the house and approached Brown concerning a three-dollar debt. An argument ensued between Kinnell and Brown over another issue which no one was able to recall. Bates

suggested that if the men were going to fight that they go down the street. Kinnell left in his car, and Brown and Fewell followed in another vehicle. The drivers stopped down the street, where Fewell and Kinnell began fighting. During the fight Kinnell was hit in the forehead by Fewell with a half-full bottle of beer, and Fewell was stabbed by Kinnell with a camping knife in the left temporal area, neck, arm, lower leg, and abdomen, resulting in wounds requiring approximately two hundred stitches. Kinnell then drove off in his automobile with Fewell and Brown in pursuit. Kinnell lost the two men, picked up an acquaintance, went past a friend's house to inquire whether he had a gun, and then drove to Mercy Hospital's emergency entrance. Fewell and Brown subsequently went to the police station hoping to find Kinnell. Police officers, observing Fewell's injuries, drove Fewell and Brown to Mercy Hospital, where Brown began a scuffle with Kinnell in the hospital emergency room. Security and police officers quelled this disturbance. Kinnell was thereafter arrested and charged with the aggravated assault of Mike Fewell.

Petitioner's first claim, that an illegal line-up or identification procedure was employed during his arrest, is without foundation. The facts alleged by him in support of this claim are that he was being treated at Mercy Hospital for injuries sustained during the assault incident when the victim arrived with police officers and identified petitioner as the assailant without a defense attorney present. The testimony at trial, not contrary to these allegations, was that petitioner had received a severe blow to the head during the fight and had driven to the hospital for emergency treatment. In the meantime, the victim (Fewell), accompanied by his friend Brown, drove by his home, armed himself with several kitchen knives, and proceeded to the police station in angry pursuit of Kinnell. Police officers, observing Fewell's extensive injuries, transported him to the hospital where they encountered petitioner in the emergency room.

■ Neither the facts alleged by petitioner nor the facts in the record support a claim of illegal identification process. The identification of petitioner as the person who stabbed Fewell was not a hotly-contested issue at trial, since petitioner did not deny his commission of the stabbing but testified that it was in self-defense. Moreover, no testimony was elicited at trial that petitioner's identity as the assailant was established through a "showup" at the hospital. Even if the victim expressly identified petitioner as his assailant at the hospital, evidence of this was not introduced at trial. Nor can it be said that in-court identification evidence was tainted by this encounter. The victim was acquainted with the defendant and named him at the police station prior to arriving at the hospital. These circumstances simply do not lend themselves to a claim of impermissibly suggestive identification procedures, unreliable identification testimony or untoward police conduct. *Cf. United States of America v. Myers*, No. 79–1364 (10th Cir., unpublished, July 30, 1980); *Meyer v. Estelle*, 621 F.2d 769 (5th Cir. 1980); *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1979), *cert. denied* 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 772 (1980); *Gonzalez v. Hammock*, 477 F.Supp. 730 (S.D.N.Y.1979); *see also Lindsay v. Henderson*, 499 F.Supp. 667 (S.D.N.Y.1980).

■ Petitioner's second claim is equally spurious. In support of his statement that the prosecutor withheld favorable evidence, he alleges that the police report of the incident was not disclosed even though it assertedly supported his defense. Petitioner has submitted an exhibit purported to be an "edited" copy of the police report in question. By no stretch of the Court's imagination can it be said that this report substantiated petitioner's defense theory or might have affected the outcome of the case. The report, even as edited by petitioner, is neutral in that it merely relates the two accounts of the incident as given by petitioner and the victim. It does not include eyewitness corroboration of petitioner's theory of self-defense. Thus, petitioner cannot show that failure to disclose this report amounted to a denial of due process.

*See United States v. Auten*, 632 F.2d 478 (5th Cir. 1980); *see also Baker v. Reid*, 482 F.Supp. 470 (S.D.N.Y.1979).

■ Petitioner's next claim is that the prosecution knowingly used perjured testimony. This claim is not well-founded. Petitioner's supportive allegations are that perjured testimony was admitted when Bill Moran, who had accompanied petitioner to the hospital, stated that he had received a knife from petitioner in the emergency room and had taken it home "for a few days," while Detective Robert Brown testified that Moran gave him this knife on June 27, 1977, the day of the incident. The transcript of trial demonstrates no such conflict in the testimony of these two witnesses. Bill Moran did not testify that he took the knife home "for a few days" as alleged. Rather, consistent with Officer Brown's testimony, Moran stated that he kept the knife "for awhile" and then took it to Brown after being questioned by him. Petitioner does not show that this testimony was false and presents no basis for his conclusion that the prosecution introduced perjured testimony or knew of its falsity. *See United States v. Jones*, 614 F.2d 80 (5th Cir.), *cert. denied* 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 801 (1980); *Hudson v. Blackburn, supra.*

Petitioner next challenges the introduction at trial of evidence he claims was seized in an unlawful search and seizure. The facts underlying this claim do not appear to be disputed. While petitioner was in the hospital, the Chief of Police entered petitioner's automobile to remove it from the hospital emergency zone and drive it to the police station. In plain view on the floor of the vehicle, the Chief observed an iron "window weight" with what appeared to be blood upon it, and retained it as possible evidence. On these facts, petitioner claims that his automobile was illegally searched and the window weight seized without a warrant or his consent, and concludes that the window weight should not have been admitted as evidence at trial.

The initial issue before the Court is whether petitioner was provided with an opportunity for full and fair litigation of this Fourth Amendment claim in the Kansas state courts. If we find that he was, then *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precludes federal habeas corpus review.

Counsel appointed to defend petitioner at trial did not move to suppress this evidence and did not object to its admission at trial. This is one of the grounds for petitioner's claim of ineffective assistance of counsel discussed hereinafter. Petitioner was appointed new counsel on appeal, which counsel decided as a tactical matter not to press this issue except as subsumed in his ineffective assistance of trial counsel argument. It is not suggested that the State of Kansas failed to provide an opportunity for litigation of this claim at either the trial or appellate court level. The two attorneys appointed to represent petitioner at the separate proceedings simply declined to argue the claim. However, petitioner did raise the issue in his *pro se* post-conviction motion to the trial court. That court, without an evidentiary hearing, held that there was no search with regard to this item, and that the seizure of it was lawful under either the automobile exception of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the search incident exception of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), or the plain view exception of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Petitioner avers that he sought .but was denied appellate review of the denial of his post-conviction motion.

■ We find that petitioner was provided a full and fair opportunity to litigate his Fourth Amendment claim at the trial and appellate court levels on direct review through independent counsels' decisions not to challenge the admission of this evidence [*see Shelton v. State of Oklahoma*, No. 77–1853 (10th Cir., unpublished, Mar. 8, 1978)], and on collateral review where both petitioner and the State were formally before the court and petitioner's claim was heard

and given plenary consideration as illustrated by the written opinion of the court [*see Sumner v. Mata*, —— U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)]. Thus, we are of the opinion that federal habeas corpus review of this claim is precluded.

■ Furthermore, we agree with the holding of the state court that this evidence was not inadmissible. At the trial, the Chief of Police testified that he entered petitioner's car in order to remove the vehicle from the hospital emergency zone. Thus, the car was entered for a lawful purpose and not to search for evidence of a crime. The Chief further testified that the window weight was in plain view. Petitioner does not refute the Chief's account of these facts. Under such circumstances, no unreasonable search was conducted and the evidence was lawfully seized.

■ In any case, even assuming the challenged evidence should have been suppressed, here, where petitioner did not deny that he cut the victim with his knife but rather the defense was predicated upon self-defense, and where neither the victim nor a witness was willing to identify the admitted object as a second weapon used in the assault, any error in its admission was harmless beyond a reasonable doubt. *See Martley v. Douglas*, 463 F.Supp. 4 (W.D. Okl.1977).

■ Petitioner's claim that his knife was unlawfully admitted into evidence is not supported by any factual allegations. The testimony of Bill Moran at trial was to the effect that petitioner gave his knife to Moran in the hospital emergency room and asked him to dispose of it. Moran then took the knife home with him but turned it over to a police detective after being questioned about the incident. No unreasonable search or seizure lead to the production of the knife at trial as evidence.

■ Petitioner's final claim is that counsel appointed to represent him at trial was so incompetent as to have deprived him of his Sixth Amendment right to effective assistance of counsel. At the conclusion of the trial, petitioner expressed his dissatis-

faction with trial counsel and new counsel was appointed for appeal. The issue of ineffective assistance of counsel is the only one of petitioner's claims which was raised on direct appeal of his conviction. Counsel who prepared the appeal cited 137 instances of alleged error on the part of his predecessor. This Court has thoroughly reviewed the errors as alleged by appellate counsel and as presented by petitioner, together with the entire transcript of the trial. We conclude that, while petitioner was not provided with an error-free trial, he was afforded reasonably competent counsel and was not prejudiced by the alleged mistakes of counsel.

As pointed out by petitioner, the United States Court of Appeals for the Tenth Circuit has replaced the "sham and mockery" test to measure competency of counsel with the "reasonably competent or skillful assistance of counsel" standard. *Dyer v. Crisp*, 613 F.2d 275 (10th Cir. 1980). In the instant case, this Court has evaluated the competency of petitioner's trial counsel by the new, more demanding standard. Thus, we have reviewed the entire record mindful of the mandate that the "Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Id.* at 278. The errors allegedly made by counsel for the defense may be grouped as follows:

1. failure to advise defendant of the charge;
2. failure to move for a transcript of the preliminary hearing;
3. failure to move for suppression of illegally obtained evidence;
4. incorrectly advising petitioner that he could not have a court trial;
5. failure to make discovery motions;
6. inadequately conducting voir dire;
7. failure to subpoena one witness and to call another;
8. refusal to call character witnesses;
9. failure to object to prosecutor's improper remarks in opening and closing statements;
10. failure to make objections at trial to introduction of evidence, hearsay testimony, and leading or repetitive questions;
11. ineffective cross-examination;
12. stipulation to qualifications of doctor as expert witness;
13. causing victim's wounds to be displayed to jury as a result of objection to photographs at pretrial;
14. failure to object to perjured testimony;
15. failure to make motions for directed verdict;
16. permitting defendant to ramble on the stand and to make damaging statements;
17. failure to request an insanity instruction;
18. failure to "formulate self-defense theory;"
19. refusal to utilize police report as evidence;
20. presented closing argument for defense which lasted only seven minutes, and never mentioned that guilt must be proved beyond a reasonable doubt;
21. joked with prosecutor within hearing of the jury; and
22. did not object to the court's proposed instructions.

Each group of alleged errors is hereinafter discussed and referred to by number.

With regard to alleged error No. 1, the transcript demonstrates that although petitioner stated at his arraignment that he thought the charges would be assault and battery, the actual charge was explained by counsel prior to his entering a plea of guilty.

Alleged errors Nos. 2, 5, 12 and 15 are simply trial strategies which might have been, but were not, employed by defense counsel in this case. There is absolutely no indication in the record that making these motions or refusing to stipulate to the expert witness would have aided in petitioner's defense.

Alleged error No. 3 is based upon the trial court's admission of the window weight into evidence. As we have discussed previously herein, this evidence was not inadmissible. Thus, counsel's decision not to move for suppression was reasonably competent.

There is no support for alleged error No. 4 in the record, and no prejudice alleged or shown to have resulted therefrom.

With respect to alleged error No. 6, the transcript of the voir dire indicates that a woman who had previously heard of the incident was adequately questioned and that the prosecution had already sufficiently questioned members of the array about relationships with trial participants so that it was not necessary for defense counsel to do so.

Alleged error No. 7 is based upon the failure of defense counsel to subpoena Glen Brown. This decision was probably wise, and certainly is not shown to have prejudiced petitioner's case, since Brown was a friend of, and with, the victim at the time of the assault, and later attacked petitioner at the hospital. The refusal to call as a witness a person whom petitioner claims heard someone say "leave me alone" is not shown to have prejudiced petitioner's case.

The refusal to call character witnesses charged as error No. 8 cannot be reviewed because petitioner does not allege what persons should have been called and how they would have testified so as to support his defense.

The remarks alleged to be improper in connection with alleged error No. 9, even if erroneous, are not so egregious as to have denied petitioner a fair trial. Moreover, defense counsel, in statements made for the defense, rebuked the prosecutor for some of his remarks.

As concerns the alleged errors in group No. 10, clearly there are several instances when defense objections would have been proper to hearsay testimony and leading or repetitive questions; however, our reading of the transcript does not demonstrate that petitioner was denied a fair trial or that such objections were necessary. Appellate counsel's assignment of these numerous errors mainly reflects a difference in style between his and trial counsel's trial techniques.

With respect to the alleged errors in No. 11, petitioner does not pinpoint what cross-examination was ineffective. The record reveals that defense counsel's cross-examination, while certainly not vigorous, was indicative of adequate preparation and a knowledge of the facts of the case. In particular, his cross-examination of the victim was thorough and emphasized weaknesses in the State's case.

With regard to the alleged error charged in No. 13, no prejudice is alleged or shown to have resulted from this occurrence.

No perjured testimony was shown to have been introduced as charged in alleged error No. 14.

In disposing of alleged error No. 16, the Court notes that having received numerous rambling discourses from this petitioner in this and other cases, it is hard to perceive that defense counsel could have done much to control petitioner's testimony from the stand. The questions asked petitioner by his counsel adequately extracted his account of the incident as self-defense.

There is not adequate evidence in the record to support an insanity instruction. Thus, alleged error No. 17 is frivolous.

In regard to alleged error in No. 18, our review of the record discloses that defense counsel attempted with some skill, through his direct examination of defendant and questioning of other witnesses, to develop a theory of self-defense. From the record, it appears that this was not an easy task. The prosecution established the lack of a self-defense motive by showing the viciousness of the attack, and that petitioner did not go to the police station or elsewhere to avoid Fewell and Brown, but met them down the street intending to fight. Petitioner had little evidence to impeach the State's proof of this element.

There is no indication in the record that the report on which alleged error No. 19 is

based contained evidence favorable to the defense or that it would have effected the verdict.

Contrary to the allegations of error in No. 20, the transcript of defense counsel's opening and closing statements reveal that he did, in fact, impress upon the jury that defendant's guilt had to be proven beyond a reasonable doubt. The closing argument also indicates preparation on the part of counsel and his development of the self-defense theory.

No prejudice is shown from the behavior which is alleged as error No. 21; nor are facts recounted in support of this claim.

Petitioner does not allege that there existed any valid reason to object to the proposed instructions, yet the failure to object is cited as error No. 22. Counsel does not display incompetency by declining to object where no grounds for objection are evident.

We conclude from the foregoing review of the record taken in conjunction with petitioner's claims raised here and on direct appeal that, while trial counsel did not venture to assert every potential objection and defense, he afforded petitioner loyal and reasonably competent representation. Moreover, given the convincing evidence against petitioner produced at trial, it cannot be said that he was prejudiced by what might generally be attributed to his counsel's non-aggressive style. The record is clearly not devoid of error. Nonetheless, it supports the state court's findings and convinces this Court that the representation "did not fall below the minimum standard of reasonable skill and competence expected of a defense attorney in a criminal case." *Dyer v. Crisp, supra,* at 276.

Having considered each of petitioner's challenges to his state conviction and finding them not to warrant federal habeas corpus relief, the Court determines that these actions must be dismissed. Our disposition of these cases renders it unnecessary to determine petitioner's pending motions.

IT IS BY THE COURT THEREFORE ORDERED that *Kinnell v. State of Kansas, et al.,* No. 79–3023 (D.Kan.), and *Kinnell v.*

*Atkins, et al.,* No. 80–3052 (D.Kan.), be, and hereby are, consolidated for all purposes.

IT IS BY THE COURT FURTHER ORDERED that these actions be dismissed and all relief denied, and that the Clerk of this Court transmit copies of this Memorandum and Order to petitioner and to the Attorney General for the State of Kansas.