**Jeffrey Linn HALL, Appellant,**

v.

**STATE OF IOWA and Attorney General of Iowa, Appellees.**

No. 82–1391.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1982.

Decided April 15, 1983.

Harold W. White of Fitzgibbons Brothers, Estherville, Iowa, for appellant.

Thomas J. Miller, Atty. Gen. of Iowa, Julie F. Pottorff, Asst. Atty. Gen., Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

LAY, Chief Judge.

In this habeas corpus proceeding, Jeffrey Hall attacks his state jury conviction for manslaughter. The federal district court, the Honorable Edward J. McManus presiding, denied relief for reasons including non-exhaustion of some claims. On appeal, we find that the petitioner did exhaust all federal claims, but find that Hall is not entitled · to succeed on the merits of those claims.

Hall's conviction in the state district court of Emmet County, Iowa, stemmed from the stabbing death of his 17-year-old girlfriend, Barbara Johnson, at her residence in Estherville, Iowa, on June 13, 1977. A neighbor of the Johnsons, Mrs. Joselyn Herke, was awakened at approximately 10:00 p.m. by a scream. From her window, Mrs. Herke saw motions of two people on the Johnson patio and heard bits of conversation and more screams. She watched someone exit through the patio door and go to a small brown car parked in the driveway, then make two more trips into the patio and back to the car before driving off. A few minutes later, Mrs. Herke watched the same or a similar brown car, which was Hall's car, pull into the driveway; Hall ran into the patio, leaving his motor running and door on the driver's side open. Mrs. Herke watched him drag a body out the

patio door across the yard almost to the car. She yelled at him; he dropped the body. Another neighbor, David Brent, said Jeffrey Hall, covered with blood, came to his door claiming that someone had killed his girlfriend and asking for help. Brent went with Hall over to the body in the Johnson yard. Hall opened his hand and showed Brent a knife, broken in two pieces, that he said he had pulled off or out of her. Hall claimed he had left before 10:00 p.m. and upon returning had found Barbara lying on the patio floor; thinking she was still alive, he had tried to drag her to the car to take her to the hospital.

The police arrived at the Johnson home about 10:15 p.m., and shortly thereafter took Hall and Brent to the police station. Terry Johnson, an agent for the Iowa Bureau of Criminal Investigation, read Hall his *Miranda* rights and interrogated him. The 19-year-old Hall then was allowed to call his parents who lived nearby.

After Hall's parents arrived, about 12:15 a.m. they called attorney Leo Fitzgibbons, who was asleep at his home about 20 miles away. Fitzgibbons talked over the telephone to Agent Johnson and the Emmet County Attorney, William Ridout. Johnson and Ridout agreed with Fitzgibbons not to ask Hall any further questions that night, with the understanding that Fitzgibbons would contact Ridout and Johnson first thing in the morning.

Despite the agreement, at about 12:45 a.m., Agent Johnson requested Hall to sign a consent to surrender his clothing, allow fingernail scrapings and an examination for fresh cuts or wounds, give blood, urine, and hair samples, and permit a search of his car. County Attorney Ridout prepared the consent form for Hall to sign. Hall signed the consent and the items were surrendered. Hall was not formally arrested at that time and was allowed to leave. In the morning, a magistrate issued a warrant for the search of Hall's car.

A grand jury handed down an indictment of murder against Hall on July 7, 1977. In a three week trial, a jury, after 3½ days of deliberation, found Hall guilty of man-

slaughter. Hall appealed to the Iowa Supreme Court which affirmed the conviction. *State v. Hall,* 297 N.W.2d 80, 92 (Iowa 1980). The United States Supreme Court denied Hall's petition for certiorari. 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981).

Hall filed a petition for writ of habeas corpus with the United States District Court for the Northern District of Iowa. In the petition Hall asserted that:

1) his consent to search was involuntary and the evidence obtained through the consent was admitted in violation of the fourth and fourteenth amendments;

2) the allowance of expert testimony which analyzed the blood splatter on Hall's clothing was without proper foundation, thereby depriving him of the fourteenth amendment right to due process;

3) the exclusion of expert psychological testimony placed a heavier burden on Hall for admission of evidence than was placed on the State, which deprived Hall of the fourteenth amendment right to due process;

4) the manner in which the consent to search was obtained, in violation of the agreement with Hall's attorney, denied Hall the right to effective assistance of counsel under the sixth and fourteenth amendments; and

5) the State's communication with Hall after he had obtained counsel was a violation of the Iowa Code of Professional Responsibility For Lawyers and a violation of the sixth and fourteenth amendments.

In an amended order on March 1, 1982, Chief Judge Edward J. McManus denied the petition. The claim of involuntary consent was dismissed under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The two issues concerning expert testimony were denied for failure to exhaust available state remedies or alternatively on the merits. The two claims concerning sixth amendment rights were denied for failure to exhaust state remedies.

I. *Exhaustion of State Remedies.*

If there is a mixture of exhausted and nonexhausted federal claims in a peti-

tion for habeas corpus, a district court must either dismiss the petition under the total exhaustion rule of *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982), or if that decision is not deemed to be retroactive, *see Richards v. Solem,* 693 F.2d 760, 763–64 (8th Cir.1982), pass only on those claims that have been exhausted. We need not confront the *Rose v. Lundy* issue since we find that all federal claims were exhausted in the state court.

### A. *Expert Testimony.*

 The claim concerning the expert testimony about the blood splatter on Hall's clothing, as well as the contention regarding the exclusion of psychological testimony, although alleging in conclusory terms "a denial of due process," do not state federal constitutional claims. As the district court held when denying Hall's habeas corpus petition, "Petitioner's allegations regarding the admission and exclusion of expert testimony are essentially evidentiary matters which are not on their face so egregious or eroding to the fundamental fairness of the trial process to rise to the level of a violation of due process or otherwise implicate constitutional rights." *Hall v. State,* No. 1C 81–3007, slip op. at 9 (D.Iowa Dec. 10, 1981). Thus, they should not be reviewed on a petition for writ of habeas corpus. *See Batten v. Scurr,* 649 F.2d 564, 571 (8th Cir.1981) (Lay, C.J., concurring); *Morrow v. Wyrick,* 646 F.2d 1229, 1234 (8th Cir.), *cert. den.,* 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981). We view the doctrine of *Rose v. Lundy,* 455 U.S. at 522, 102 S.Ct. at 1205, as being confined to federal claims. Nonexhausted state claims included in a federal habeas petition and having no constitutional relevance should not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal Constitution.

### B. *Sixth Amendment Right To Counsel.*

Hall initially contended in the state court that the manner in which his consent to search was obtained violated DR 7–104(A)(1) of the Iowa Code of Professional Responsibility for Lawyers.[1] However, Hall's argument in his state brief quoted from *United States v. Howard,* 426 F.Supp. 1067, 1071–72 (W.D.N.Y.1977), a case which directly dealt with the sixth amendment issue under similar facts.

In response to Hall's discussion of the State's conduct leading to the consent, the State devoted five pages of its brief to the Iowa Supreme Court to distinguish *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In *Brewer,* the Court found that the right to effective assistance of counsel was violated when police interrogated the defendant in the absence of his counsel and in breach of an agreement with the attorney not to question the defendant. *Id.* at 392, 399–405, 97 S.Ct. at 1236, 1239–40.

Hall's reply brief identified the State's conduct as raising "an issue with constitutional dimensions." Additionally, Hall quoted the Court in *Brewer,* 430 U.S. at 401 n. 8, 97 S.Ct. at 1240 n. 8, that " 'we do not deal here with notions of offer, acceptance, consideration, or other concepts of the law of contracts. We deal with constitutional law.' "

The Iowa Supreme Court, concluding from the totality of the circumstances that Hall's consent was voluntary, discussed the sixth amendment issues although in a negative manner. That court asserted:

> The defendant does not allege a sixth-amendment violation, such as addressed in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (violation of agreement not to interrogate), nor would the effective-counsel protections of the sixth amendment appear to be applicable because, when the agreement was

---

1. DR 7–104(A)(1) states:

 During the course of his representation of a client a lawyer shall not:
 (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so. Iowa Code Ann. App. § 610 (1975).

made, no adversary criminal proceedings had been initiated, *see Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972). Rather, the defendant asks that we fashion an exclusionary rule based only upon violations of the ethical standard in DR7–104(A)(1). While we view violations of these standards as serious matters, they fall short of constitutional dimensions and, like the court in *Coughlan,* we are reluctant to expand the concept of *Miranda* to these circumstances. *Coughlan v. United States,* 391 F.2d [371] at 372 [ (9th Cir. 1968)].

297 N.W.2d at 90.

In Hall's petition for rehearing to the state supreme court, the assertion was explicitly made that the State's violation of the agreement and of the disciplinary rule constituted a denial of Hall's constitutional right to effective assistance of counsel.

■ The Supreme Court recently reinforced a strict standard for exhaustion of state remedies. *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 277–78, 74 L.Ed.2d 3 (1982). However, it did not foreclose exhaustion by means of citation to a case predicated on the same federal ground as contained in the habeas petition. *See Batten v. Scurr,* 649 F.2d 564, 568 (8th Cir. 1981). We find Hall's citation to, and excerpts from, the *Howard* decision in his brief, taken in conjunction with the *Brewer* quotation in his reply brief and reference to the "constitutional dimensions" of the issue were sufficient to properly present the substance of his sixth amendment claims to the state court. In addition, the facts necessary to resolve these issues were sufficiently developed in the record. *See Eaton v. Wyrick,* 528 F.2d 477, 480 (8th Cir.1975).

■ We thus find that the defendant has sufficiently exhausted his sixth amendment claims. We address them here.[2]

II. *Sixth Amendment Claims.*

■ Hall contends that his consent to search was obtained in violation of his right to effective assistance of counsel under the sixth and fourteenth amendments to the Constitution. We respectfully disagree with the Iowa Supreme Court which was "not persuaded that anything more than differing interpretations of the agreement occurred here." 297 N.W.2d at 90. From a reading of the testimony, we find that the request to Hall for his consent to search was a clear violation of any reasonable interpretation of the agreement, transgressing not only the face of the understanding but its intent.[3] But for the assurances of

**2.** Hall contends that his consent to search was involuntary in violation of the fourth and fourteenth amendments. As the district court held, the doctrine of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), prevents us from reviewing this claim in a habeas corpus petition. *See Shane v. State,* 581 F.2d 727, 728 (8th Cir.1978). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. at 494, 96 S.Ct. at 3052. An examination of the record shows that the state has provided Hall with an opportunity to fully and fairly litigate the issue. *See Hines v. Auger,* 550 F.2d 1094, 1097 (8th Cir.1977).

**3.** As to the agreement, Hall's attorney, Leo Fitzgibbons, made the following professional statement to the court:

I was in bed and asleep, and I received the call and talked to Terry Johnson over the telephone, and I told him that I wanted him to have no further contact with the boy that night or to ask him—or to interrogate him in any fashion. I believe, as I recall, Mr. Ridout came on the phone and I had the same agreement with him, that I would see them the first thing in the morning. I saw Mr. Ridout the next morning at 7 o'clock.

Agent Johnson of the Iowa Bureau of Criminal Investigation stated before the grand jury:
I think it was about 12:15 a.m. the Halls contacted Leo Fitzgibbons by telephone. I talked with Mr. Fitzgibbons. He said don't talk to the young man any more tonight. That they would contact us in the morning. I agreed to that. Mr. Ridout talked with Fitzgibbons and it is my understanding that, you know, Fitzgibbons again stated he didn't want us to talk with the boy any more. I heard Bill [County Attorney Ridout] say that we were going to apply for a search warrant and as I recall that ended the conversation.

In a hearing on a motion to suppress evidence, Agent Johnson testified:

the county attorney and the state investigative agent made to him over the telephone, it is reasonable to assume Hall's defense counsel would have gone to the police station as soon as he was contacted. Instead, the attorney reasonably relied on representations of the State's officials that they would not "question" Hall about the case or "communicate" or "talk" with him that night. Furthermore, the county attorney apparently concluded the conversation with the explicit statement that application for a search warrant would be made. By subsequently proceeding in violation of the agreement to ask Jeffrey Hall to consent to a search of his clothing, hands, arms, urine, blood, hair, and car, we find that the State's officials not only acted unethically but in bad faith. Such unprofessional conduct cannot be condoned.

█ It is generally recognized that before an accused can be denied the right to the effective assistance of counsel guaranteed by the sixth and fourteenth amendments, such right must have legally attached. *See Kirby v. Illinois,* 406 U.S. 682, 688–90, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972). The earliest conceptual moment of attachment has not been pinpointed, as

the Supreme Court acknowledged in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977):

There has occasionally been a difference of opinion within the Court as to the peripheral scope of this constitutional right. See *Kirby v. Illinois,* 406 U.S. 682 [92 S.Ct. 1877, 32 L.Ed.2d 411]; *Coleman v. Alabama,* 399 U.S. 1 [90 S.Ct. 1999, 26 L.Ed.2d 387].... Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' *Kirby v. Illinois, supra,* [406 U.S.] at 689 [92 S.Ct. at 1882].

430 U.S. at 398, 97 S.Ct. at 1239.

█ At the time the State requested Hall's consent to search, none of the events traditionally considered to trigger attachment of the sixth amendment's right to counsel had transpired.[4]

Notwithstanding this fact, because of the agreement with Hall's attorney, one could reasonably urge that Hall's right to effec-

---

I spoke with the person who identified himself as Leo Fitzgibbons, and he told me that he didn't want me to discuss—no, not "discuss." He told me he didn't want me to ask the boy any more questions, I think, about the case .... Well, as I said, my recollection is you [Fitzgibbons] told me not to ask him any more questions.

County Attorney William B. Ridout made the following statement in a pre-trial hearing:

Mr. Fitzgibbons was called by the parents of Jeff Hall several hours after the death of Barbara Ann Johnson in Estherville and he indicated to me at that time that he was representing Jeff Hall; that any communications I had with or relative to Jeff Hall were to be made either to him or with Richard Meyer, his assistant.

4. The fifth amendment's protection of the right to counsel cannot assist Hall. Although the fifth amendment right to counsel arises at "custodial interrogation," *see Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), a point which frequently occurs earlier in the investigative sequence than "adversary judicial proceedings," the fifth amendment right to counsel is not an indepen-

dent right; rather, it stems from the privilege against self-incrimination. *See Kennedy v. Fairman,* 618 F.2d 1242, 1247–48 (7th Cir.), *cert. dismissed,* 449 U.S. 939, 101 S.Ct. 339, 66 L.Ed.2d 206 (1980). Thus, the fifth amendment right to counsel only protects a defendant's privilege against making incriminating statements against himself. *See Smith v. Wainwright,* 581 F.2d 1149, 1151–52 (5th Cir.1978); *cf. Schmerber v. California,* 384 U.S. 757, 765, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966) (blood sample not within fifth amendment privilege as "testimonial capacities were in no way implicated"); *United States v. Wade,* 388 U.S. 218, 222–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967) (compelled exhibition of physical characteristics, including sound of voice, did not disclose any knowledge or guilt of that person).

Hall made no incriminating statements in response to the request by the State for his consent to search; he merely gave that consent. *See Smith v. Wainwright,* 581 F.2d at 1152 ("consent to search is not a self-incriminating statement; '[i]t is not in itself evidence of a testimonial or communicative nature' ").

tive assistance of counsel had "attached by consent" before he was requested to agree to the search.[5] *Cf. Brewer v. Williams,* 430 U.S. at 401 n. 8, 97 S.Ct. at 1240 n. 8. Moreover, the looming presence of the county attorney was manifest. *See State v. Johnson,* 318 N.W.2d 417, 435 (Iowa 1982); *see also Lomax v. State,* 629 F.2d 413, 415–16 (5th Cir.1980), *cert. den.,* 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981); *cf. Kirby v. Illinois,* 406 U.S. at 689, 92 S.Ct. at 1882 (emphasizes significance of moment when defendant is faced with "prosecutorial forces"). The county attorney not only participated in reaching the agreement but also prepared the itemized consent form for Hall to sign.

■ We need not reach any definite conclusion on whether Hall's sixth amendment right to counsel had attached before he was asked to consent to the search. For the purposes of this decision, we merely assume that it did.[6] Hall in any event is not entitled to relief. Not all government interference with the attorney-client relationship renders counsel's assistance so ineffective as to violate a defendant's sixth amendment right to counsel. *United States v. Irwin,* 612 F.2d 1182, 1185 (9th Cir.1980). A pretrial confrontation of the accused by the state must be analyzed to determine "whether potential substantial prejudice to

defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *United States v. Wade,* 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967). *See Schmerber v. California,* 384 U.S. 757, 765–66, 86 S.Ct. 1826, 1832–33, 16 L.Ed.2d 908 (1966); *United States v. Irwin,* 612 F.2d at 1186–87.

We find that the course of events here would not have been altered had the agreement not been violated and the consent not been obtained. As to most of the items to which Hall granted the consent to search, if counsel had been at the police station and had advised Hall not to consent, the police would have been entitled under the fourth amendment to take these items anyway. The presence of his counsel would have been futile; therefore, no violation of the right to the effective assistance of counsel occurred. *See Schmerber v. California,* 384 U.S. 757, 765–66, 86 S.Ct. 1826, 1832–33, 16 L.Ed.2d 908 (1966); *United States v. Smith,* 470 F.2d 377, 380 (D.C.Cir.1972); *Lewis v. United States,* 382 F.2d 817, 819 (D.C.Cir.), *cert. den.,* 389 U.S. 962, 88 S.Ct. 350, 19 L.Ed.2d 377 (1967). As to other items of Hall's which could have been taken in a warrantless search without consent only by violating the fourth amendment, even if we assume that Hall's right to effective assistance of counsel was violated,[7] such takings

5. Compare the rule in New York which provides that, apart from the federal Constitution, "once the police know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant, the accused's right to counsel attaches...." *People v. Arthur,* 22 N.Y.2d 325, 292 N.Y.S.2d 663, 666, 239 N.E.2d 537, 539 (1968). *See People v. Kazmarick,* 52 N.Y.2d 322, 438 N.Y.S.2d 247, 250, 420 N.E.2d 45, 48 (1981); *People v. Hobson,* 39 N.Y.2d 479, 384 N.Y.S.2d 419, 422, 348 N.E.2d 894, 897–98 (1976); *People v. Donovan,* 13 N.Y.2d 148, 243 N.Y.S.2d 841, 842–46, 193 N.E.2d 628, 629–31 (1963), *quoted in Escobedo v. Illinois,* 378 U.S. 478, 486–87, 84 S.Ct. 1758, 1762–63, 12 L.Ed.2d 977 (1964).

6. By requesting the consent in violation of the agreement, the state deliberately and designedly attempted to elicit concessions from the suspect to obtain evidence in circumvention of protections a lawyer *might* provide. *Accord*

*United States ex rel. Daley v. Yeager,* 415 F.2d 779, 783, 784 n. 11 (3d Cir.1969), *cert. den.,* 397 U.S. 924, 90 S.Ct. 919, 25 L.Ed.2d 104 (1970) (after preliminary hearing was adjourned because a lawyer was requested, the police, despite knowledge of the request, secured the defendant's consent to search his apartment where bloodstained clothing was found; court found sixth amendment rights were thus denied). *See Brewer v. Williams,* 430 U.S. at 399–400, 97 S.Ct. at 1240; *Massiah v. United States,* 377 U.S. 201, 203, 206, 84 S.Ct. 1199, 1201, 1203, 12 L.Ed.2d 246 (1964). *Cf. Rhode Island v. Innis,* 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689 n. 4, 64 L.Ed.2d 297 (1980) (the term "interrogation" may not be apt in the sixth amendment context); Kamisar, *Brewer v. Williams, Massiah and Miranda: What Is "Interrogation"? When Does It Matter?,* 67 Geo.L.J. 1, 3–4 (1978).

7. *But cf. United States v. Wade,* 388 U.S. at 227–28, 236–37, 87 S.Ct. at 1932–33, 1937–38. In *Wade,* the Court held the right to effective

were harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

■ The "plain view" exception to the fourth amendment warrant requirement would have permitted Hall's bloody clothing to be seized at the police station even if Hall's attorney had been present and had advised him not to consent to its taking. *See Washington v. Chrisman,* 455 U.S. 1, 5–6, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982); *Coolidge v. New Hampshire,* 403 U.S. 443, 465–71, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971); *United States v. Roberts,* 644 F.2d 683, 686 (8th Cir.) (en banc), *cert. den.,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

The "emergency" exception to the warrant requirement would have authorized police to take Hall's fingernail scrapings and blood sample regardless of advice from counsel. In *Cupp v. Murphy,* 412 U.S. 291, 292, 296, 93 S.Ct. 2000, 2002, 2004, 36 L.Ed.2d 900 (1973), the Supreme Court found fingernail scrapings taken by police of a murder suspect to be a valid warrantless search without consent. The Court stated: "[T]he very limited search [was] necessary to preserve the highly evanescent evidence they found under his fingernails . . . ." *Id.* at 296, 93 S.Ct. at 2004.

The night of the murder, Hall claimed he had been at a party and had been drinking. In *Schmerber v. California,* 384 U.S. 757, 758–59, 86 S.Ct. 1826, 1829–30, 16 L.Ed.2d 908 (1966), a blood sample was withdrawn from a defendant arrested for driving while intoxicated, although consent had been refused on the advice of counsel. The Supreme Court found that the warrantless search was valid as the police officer "might reasonably have believed that he was confronted with an emergency," because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops." *Id.* at 770, 86 S.Ct. at 1836. As to the claim that the sixth amendment right to counsel had been violated by withdrawing the blood, the Court said: "No issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented." *Id.* at 766, 86 S.Ct. at 1833.

■ The record indicates that analyses of Hall's blood sample and urine sample did not reveal any alcohol or drug content. Although the State in closing arguments stressed the fact that Hall's blood sample showed no indication of alcohol contrary to his representation, no similar prejudicial use was made by the state of the urine analysis test. Therefore, whether or not taking the urine sample would have been permissible

assistance of counsel was denied when the defendant was placed in a lineup without notice to and in the absence of counsel after the sixth amendment had attached by indictment. The Court stated:

> The Government characterizes the lineup as a mere preparatory step in the gathering of the prosecution's evidence, not different— for Sixth Amendment purposes—from various other preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like. We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the pre-

sentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial.

*Id.* at 227–28, 87 S.Ct. at 1932–33.

Despite this dictum in *Wade,* we analyze this case in a different manner because of the significance of the agreement and its violation. *Cf. Brewer v. Williams,* 430 U.S. at 401 n. 8, 97 S.Ct. at 1240 n. 8 (concerning significance of agreement not to question defendant in absence of counsel); *id.* at 415, 97 S.Ct. at 1247–48 (Stevens, J., concurring). Because the agreement was made, and because it was violated when the consent to search was requested, Hall at the time was entitled by consent to the presence of counsel. Because of the facts of this case, we do not need to decide whether the absence of counsel could be constitutional error in violation of the sixth and fourteenth amendments.

under the *Cupp-Schmerber* doctrine, *see Yanez v. Romero,* 619 F.2d 851, 854–56 (10th Cir.), *cert. den.,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), any possible constitutional error would be harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *United States v. Morgan,* 562 F.2d 1001, 1002–03 (5th Cir. 1977).

Hall's hair sample was actually exculpatory, since tests revealed that it did not match hair found in the victim's hands. Therefore, even if the sixth amendment could have been violated by requesting such item, we find such error would be harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. at 23–24, 87 S.Ct. at 828.

■ Hall's hands and exposed arms were examined for fresh cuts. Such examination does not appear to be a "search" within the parameters of the fourth amendment. *See United States v. Richardson,* 388 F.2d 842, 845 (6th Cir.1968). Admonition from counsel to resist such examination thus would have been in vain. *See Schmerber v. California,* 384 U.S. at 765–66, 86 S.Ct. at 1832–33. In any event, no fresh cuts or wounds were found on Hall; any error again would be harmless. *See Chapman v. California,* 386 U.S. at 23–24, 87 S.Ct. at 827–28.

■ As to Hall's car, photographs of the bloody steering wheel and gearshift knob were introduced into evidence. When police initially arrived at the Johnson home, Hall's car was parked in the driveway with its motor running, its interior light on, and its door on the driver's side open. The blood on the car's steering wheel and gearshift knob was apparent from outside of the vehicle. Thus, regardless of the circumstances under which the consent to search

was obtained, photographs of this evidence were validly derived under the "plain view" exception for warrantless searches. *See Coolidge v. New Hampshire,* 403 U.S. at 465–71, 91 S.Ct. at 2036–40; *United States v. Sanders,* 631 F.2d 1309, 1313–14 (8th Cir. 1980), *cert. den.,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981); *Kinnell v. State,* 509 F.Supp. 1248, 1251 (D.Kan.1981). As to this evidence, counsel's directions to refuse consent to search the car could not have prevented a valid warrantless search. *See Schmerber v. California,* 384 U.S. at 765–66, 86 S.Ct. at 1832–33.

There seems from the record no question that the car's steering wheel and gearshift knob were not removed until the next morning pursuant to the search warrant. Therefore, as to these items, instructions from counsel to refuse consent to the search would likewise have been in vain. *See id.*

■ There is conflicting evidence as to whether the police conducted a more thorough search of the car the night of the murder than to merely reach in to shut off the ignition. Two letters, one from Barbara to Hall, the other from Hall to Barbara, were taken at some point from the glove compartment of the car. The policemen involved testified that only the ignition was shut off that night and the car door shut; the discovery of the letters was made the next morning pursuant to the search warrant. The ambulance driver, however, testified that the police opened doors on both sides of the car, sat inside the car, and searched it. The driver did not testify though as to whether he knew if the glove box were opened and the letters actually found that night. The letters were sought in the warrant application; Hall contends that the State's knowledge of their existence could have been obtained only by a prior search.[8] In any event, the letters themselves were not introduced into evidence, their contents were never referred to

8. The Iowa Supreme Court, although stating that it did not need to reach the issue because it had concluded the consent was voluntary,

found insufficient evidence to support Hall's contention of a pre-warrant search of the car. 297 N.W.2d at 91.

by any witness, and any understanding of the relationship between Barbara and Hall which may have been obtained from the letters would have been merely cumulative to information obtained from various witnesses in the case. Even if the letters had been taken pursuant to the consent and in violation of the sixth and fourteenth amendments, such error would be harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *United States v. Morgan,* 562 F.2d 1001, 1002–03 (5th Cir.1977), *cert. den.,* 434 U.S. 1050, 98 S.Ct. 899, 54 L.Ed.2d 802 (1978).

In conclusion, therefore, Hall's claim of a violation of the right to counsel under the sixth and fourteenth amendments, as well as his other claims, cannot provide a basis for granting a writ of habeas corpus. The district court's order dismissing the fourth amendment claim that the consent was involuntary is affirmed. The portion of the court's finding that the allegations regarding the admission and exclusion of expert testimony were not exhausted is vacated; the court's alternative order dismissing these claims on the merits is affirmed. The part of the order which finds petitioner's sixth amendment rights were not exhausted is vacated; these claims are now ordered dismissed on the merits.

We affirm in part and vacate in part and remand to the district court to enter judgment in accord with our order.