STATE OF MAINE

PENOBSCOT, SS.

FILED AND ENTERED
SUPERIOR COURT

MAY 0 4 2000

PENOBSCOT COUNTY

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-99-13

DONALD L. GARBRECHT
LAW LIBRARY

MAY 9 2000

STATE OF MAINE,

v.

GERALDINE MALMSTROM,

Defendant

ORDER ON MOTION TO SUPPRESS
PTP-PEN - 5/4/2000

By motion dated May 6, 1999 the defendant seeks to suppress statements made by the defendant in seven separate conversations to F.B.I. Agent Wayne Hedrich. Hearings were held on February 28 and March 2, 2000.

The facts are largely undisputed, however the implication of those facts is the subject of a vigorous constitutional argument between defense counsel and the State prosecutor.

John A. Malmstrom was murdered on January 24, 1997. Shortly thereafter, during the course of the ongoing investigation, George Singal was retained as Geraldine Malmstrom's attorney and on March 17, 1997 Attorney Singal wrote to Detective R. McKinney of the Bangor Police Department advising Detective McKinney that Mrs. Malmstrom was asserting her constitutional rights and would not answer written questions submitted to Mrs. Malmstrom. Attorney Singal further advised "that no law enforcement official is authorized to talk to Mrs. Malmstrom directly, nor is any law enforcement official authorized to enter her property without a valid warrant". (See Defendant's Exhibit 2, attached hereto.)

On May 27, 1997 Mrs. Malmstrom (hereinafter referred to as the defendant) went to the office of F.B.I. Agent Wayne Hedrich and asked Agent Hedrich if he wanted to ask her any questions. The defendant asked this question prior to introducing herself. The defendant expressed displeasure with the fact that she was the focus of the murder investigation, and indicated that she felt her husband's death might be related to her husband's cooperation with the Department of Justice or the Federal Drug Enforcement Agency. The defendant was emotional and at times spoke in whispers. Arrangements were made for an interview at her house the next day. The defendant again indicated she had problems with the Bangor Police Department, said she would release information, and indicated that she could not collect insurance benefits which were being held back due to the investigation. During their conversation, which lasted less than three hours, the defendant indicated that she and her husband had a respect for the F.B.I. The defendant's daughter was present near the end of the interview.

Agent Hedrich and the defendant agreed to meet again on the next day, May 30, 1997. During this meeting Agent Hedrich asked the defendant to go into greater detail of her activities on the night of the shooting and asked questions about firearms. This interview lasted about two hours, and they agreed to meet again, but did not set a time.

On June 3 and 4, 1997 Agent Hedrich and others met with members of the Bangor Police Department for what the court finds was a meeting to share and exchange information and the court finds that the F.B.I. had by the June 3, 1997

2

meeting initiated a separate F.B.I. investigation for a possible violation of federal law. Attorney Singal's letter was shown to the F.B.I. as well as the list of questions sent to the defendant, which Mr. Singal had refused to answer. Agent Hedrich testified that he had asked the substance of all of the questions on March 30, 1997 and though he was aware of a list of questions, he had not seen the questions prepared by the Bangor Police Department and sent to the defendant for answer and the court accepts this testimony as fact. The court also finds that the Bangor Police Department and the F.B.I. agreed to share future results of the independent investigations and would cooperate with each other in their investigative efforts.

On June 4, 1997 Agent Hedrich called the defendant to set up another interview and during their discussion the defendant expressed the opinion that the FBI had received a "bad rap" on Waco and Ruby Ridge. She again expressed confidence in the FBI.

On June 5, 1997 Agent Hedrich and Paul Palumbo met with the defendant at her residence. The defendant's mother-in-law was also present at the meeting. The defendant discussed a letter she had written to her attorney, again discussed her insurance problems and discussed the possibility of going to the Bangor Police Department for an interview. This interview lasted two to three hours. On June 10, 1997 Hedrich called the defendant and arranged a meeting for the next day at her house. During this conversation the defendant asked Hedrich to attend a meeting with her physician and indicated she had post traumatic stress disorder. On June 11, 1997 Agents Hedrich and Goulet met the defendant at her home and again discussed

3

meeting with the Bangor Police Department. The defendant indicated that she did not know how her lawyer could refuse her and that Attorney Singal must be aware of the FBI investigation. She also indicated that the family felt Attorney Singal should go to the interview if she decided to go. The meeting, which again included a discussion of her activities on the night of her husband's murder, lasted less than three hours.

During the May 30, 1997 meeting the defendant agreed to take a polygraph test, but further efforts to set up this testing through Attorney Singal were unsuccessful and after approximately two and one-half months the investigation was closed.

On January 4, 1999 the defendant was indicted for the murder of her husband.

Seminal principles of constitutional law recognize that the sixth amendment right to counsel attaches at critical steps in the criminal justice process . . . and "whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him . . ." United States. v. Wade, 388 US 218, 224 (1967; Brewer v. Williams, 430 US 387, 398 (1977).

"Once the right to counsel has attached . . . the State must honor it". That protection cannot be subverted through governmental efforts to elicit statements from the defendant in the absence of counsel after the right to counsel has attached. Massiah v. United States, 377 US 201 (1964). The Sixth Amendment guarantees the

4

accused, at least after the initiation of formal charges, the right to rely on counsel as a medium between him and the State. State of Maine v. Moulton, Jr., 474 US 159 (1985). Moulton upheld the suppression of evidence obtained against the defendant after he had been formally charged in violation of his Sixth Amendment rights to counsel, but allowed the introduction of evidence against the defendant on uncharged conduct, notwithstanding that at the time of the collection of the evidence Moulton had counsel.

Defense counsel further asserts that the defendant's Fifth Amendment rights to remain silent after the retention of counsel have been violated. The court finds guidance from Beckwith v. United States, 425 US 341 (1976). In Beckwith the District Court ruled that the defendant was entitled to Miranda warnings "when the court finds as a fact that there were custodial circumstances . . . The court of appeals affirmed 510 F2d 741 (1975), noting that the reasoning of Miranda was based in crucial part on whether the suspect has been taken into custody or otherwise deprived of his freedom in any significant way".

The appeal court further noted that the major thrust of Beckwith's argument is that "the principle of Miranda or Mathis should be extended to cover interrogation in noncustodial circumstances after a police investigation has focused on the suspect".

The Beckwith court continued "with the Court of Appeals, we are not impressed with this argument in the abstract nor as applied to the particular facts of Beckwith's interrogation . . . It goes far beyond the reasons for that holding and such

5

an extension of the Miranda requirements would cut this court's holding in that case completely loose from its own explicitly stated rational . . . and that special safeguards are required in the case of incommunicado interrogation of individuals in a police dominated atmosphere, resulting in self-incriminating statements without full warnings of constitutional rights".

The Beckwith court recognized that there may be special circumstances involving non-custodial interrogations that require examination and that the courts junction is to then "examine the entire record and make an independent determination of the ultimate issue of voluntariness". Davis v. North Carolina, 384 US 737 (1966).

The parties to this hearing agree and stipulate that no Miranda warnings were given and no waivers of Fifth or Sixth Amendment rights obtained. Given the clearly noncustodial nature of the meetings with the defendant, and the fact that an indictment was not returned until some 18 months later, Miranda was not required, and Agent Hedrich was not prohibited by the Sixth Amendment from obtaining statements from the defendant voluntarily initiated and voluntarily given by the defendant to Agent Hedrich. The defense relies heavily on United States v. Howard, 426 F. Supp. 1067 (W.D. N.Y. 1977). Though there is dicta in the opinion which lends support to the position of the defendant, a reading of Howard reveals a defendant in custody who was questioned by FBI after counsel advised the FBI not to question the defendant further.

Though there is evidence in the record that the defendant was emotional,

spoke in whispers, and may have been on medication, the court is satisfied beyond a reasonable doubt that the defendant's statements were as a result of the defendant's own free will and rational intellect. The defendant initiated the initial contact and freely agreed to continued meetings and conversation and at times was present with her daughter and mother-in-law during some of the conversations. Indeed, what is clear is that both the government and the defendant were using each other for their own purposes. The defendant using the FBI to shift the focus of the investigation and to facilitate the collection of insurance proceeds, and the government using the defendant to investigate the commission of a crime, which ultimately could implicate others -- or the defendant. This court finds no chicanery or trickery violative of due process, finds no "coercive police activity", and finds that the defendant's statements were the result of her free and knowing choice to provide information to the FBI. For a comprehensive and useful discussion of the issue of voluntariness see the majority opinion and dissent in State v. Rees, Dec #2000 ME SS, March 31, 2000.

The defendant's motion to suppress is denied.

Dated:

5|1|00

Paul T. Pierson
Superior Court Justice

7

# GROSS, MINSKY, MOGUL & SINGAL, P.A.
### ATTORNEYS AT LAW
23 WATER STREET, SUITE 400
P.O. BOX 917
BANGOR, MAINE 04402-0917
TELEPHONE (207) 942-4644
FAX (207) 942-3699

NORMAN MINSKY
GEORGE Z. SINGAL
LOUIS H. KORNREICH
GEORGE C. SCHELLING
EDWARD W. GOULD
STEVEN J. MOGUL
JAMES R. WHOLLY

DANIEL A. PILEGGI
PHILIP K. CLARKE
SANDRA L. ROTHERA
JAMES S. NIXON
F. TODD LOWELL
MELISSA J. REYNOLDS

EDWARD L. GROSS (RETIRED)
WAYNE P. LIBHART (RETIRED)

JULES L. MOGUL (1930-1984)

March 17, 1997

R. McKinney, Detective
BANGOR POLICE DEPARTMENT
35 Court Street
Bangor, Maine 04401

Re: John Malmstrom Investigation

Dear Det. McKinney:

I have reviewed the written questions you earlier forwarded. Mrs. Malmstrom is asserting her Constitutional rights and will not be answering.

Please be advised that no law enforcement official is authorized to talk to Mrs. Malmstrom directly, nor is any law enforcement official authorized to enter her property without a valid warrant.

I assume this correspondence is confidential to your files. Recently, news people have called me claiming to have inside information.

Very truly yours,

GROSS, MINSKY, MOGUL & SINGAL, P.A.

George Z. Singal

GZS:cj

bcc: Geraldine Malmstrom

DEFENDANT'S
EXHIBIT
2
CR-99-13
PENGAD-Bayonne, N.J.

Questions to be submitted to Geraldine Malmstrom

1.    Mrs. Malmstrom please describe your activities, and to the extent that you know, the activities of your family on the day of your husband's death (January 24th).  Please include when your family members and you awakened that morning through the time you returned to your residence late that evening after being notified of your husband's death.  Please be specific, to include, but not limited to, the following:

any and all times you left your residence;

when you left;

when you returned;

your destinations and the routes you travelled;

when you arrived;

the length of stay;

where you went from there, when you arrived and the routes you travelled;

if you made any side trips include the routes you travelled;

the times you were alone and where;

the people you were with, as well as, where and when you were with them; and

any and all telephone conversations you may have had.

2.    Mrs. Malmstrom please describe the telephone conversation you had with your daughter Juliette reference her not being able to find her father the night of his death.

3.    Mrs. Malmstrom please list any and all firearms as well as ammunition owned by your deceased husband, you, or other family members.   Please be specific about each firearm's manufacturer, model, caliber, serial number as well as date and place of purchase.   Please include if any of these firearms had ever been fired.   If so, do include when, where and by whom.   Please identify the current location of each firearm and ammunition.

4.    Mrs. Malmstrom please describe any and all threats of which you are aware that may have been received by any members of your family.   If any, do include what actions were taken.   Please be specific in reference to people that may have had a motive to harm your husband or family.

5.    Mrs. Malmstrom can you identify who placed the firearms found in your daughter Jennifer's bedroom.
If you, why?
If someone other than you, do you know who and why?


The Bangor Police may have follow-up questions for you.
Thank you.

PENOBSCOT COUNTY SUPERIOR COURT
DOCKET NO. CR-99-13
STATE OF MAINE V GERALDINE KRAUSE MALMSTROM

DONALD L. GAMBRECHT
LAW LIBRARY

MAY 9 2000

ATTORNEYS OF RECORD:

ANDREW BENSON, ASSISTANT ATTORNEY GENERAL
DEPARTMENT OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333

GEORGE Z. SINGAL, ESQ.
DANIEL PILEGGI, ESQ.
GROSS, MINSKY, MOGUL & SINGAL PA
PO BOX 917
BANGOR ME 04402-0917